2003-NMCA-087

71 P.3d 1286

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Richard LUJAN, Defendant–Appellant.**

No. 22,233.

Court of Appeals of New Mexico.

May 28, 2003.

Patricia A. Madrid, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

John B. Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

FRY, Judge.

{1} Defendant appeals his convictions for four counts of trafficking in a controlled substance. We consider the effect of Defendant's failure to utilize procedures under the Interstate Agreement on Detainers (IAD) on the Sixth Amendment right to a speedy trial. We hold that, under the circumstances of this case, Defendant's delay in exercising his rights under the IAD does not weigh against him for purposes of his speedy trial claim. We further hold that the State violated Defendant's right to a speedy trial, and we therefore reverse his convictions and remand for the district court to enter an order dismissing the charges against Defendant. Consequently, we need not reach Defendant's numerous other arguments.

## BACKGROUND

{2} The district court convicted Defendant based on evidence that he sold drugs to an undercover narcotics agent in June 1995. Specifically, Agent Dennis Cordova testified that on June 8, 1995, he went to Defendant's residence and purchased an "eight ball" of cocaine and a half-gram of heroin from Defendant. Agent Cordova further testified that, a few days later, he returned to Defendant's residence and purchased an additional two grams of heroin and an ounce of cocaine.

{3} A grand jury indicted Defendant on August 27, 1997, on four counts of trafficking in a controlled substance. Due to the course of events explained below, Defendant was not convicted of the charges until July 21, 2000. Defendant appeals.

## DISCUSSION

{4} Defendant contends the State denied his right to a speedy trial as guaranteed by the Sixth Amendment to the United States Constitution. In analyzing Defendant's claim, we weigh the four factors delineated in *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972):(1) length of the delay, (2) reasons for the delay, (3) the defendant's assertion of the right to a speedy trial, and (4) prejudice to the defendant. *State v. LeFebre*, 2001–NMCA–009, ¶ 9, 130 N.M. 130, 19 P.3d 825. On appeal, although we give deference to the district court's factual findings, we independently evaluate the four factors "to ensure that no violation has occurred." *State v. Plouse*, 2003–NMCA–048, ¶ 34, 133 N.M. 495, 64 P.3d 522. We must first determine whether the length of the delay was presumptively prejudicial. *Salandre v. State*, 111 N.M. 422, 427, 806 P.2d 562, 567 (1991). If the delay triggers the presumption of prejudice, then it becomes the State's burden to demonstrate that it did not violate Defendant's speedy trial rights. *Id.* at 428, 806 P.2d at 568.

*Length of the Delay*

{5} The State acknowledges that the nearly three-year delay in this simple case is presumptively prejudicial. *See, e.g., Salandre*, 111 N.M. at 428, 806 P.2d at 568 (stating that nine months is presumptively prejudicial in a simple case). Consequently, the State had the burden to show that Defendant's speedy trial rights were not compromised. *Id.* at 427, 806 P.2d at 567.

{6} The existence of the presumption of prejudice triggered by the delay is distinct from the issue of the weight of the delay relative to the other three factors of the balancing test. *Id.* To assess the weight of this factor, we consider that the delay the law can tolerate in the prosecution of a simple crime is considerably less than can be tolerated for a serious, complex crime. *Barker*, 407 U.S. at 531, 92 S.Ct. 2182. In a simple shoplifting case, for example, our Supreme Court has weighed a seventeen-month delay somewhat heavily against the State. *Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990). Therefore we hold, and the State concedes, that the long delay in the present case weighs heavily against the State.

*Reasons for the Delay*

{7} The State and Defendant characterize the reasons for the delay quite differently, particularly with respect to whether Defendant's failure to utilize procedures under the IAD affects his Sixth Amendment claim. Although we do not agree with every detail of Defendant's month-by-month analysis, overall this prong weighs against the State because at least sixteen months of the delay weigh squarely against the State, and only a few months of the delay weigh against Defendant.

{8} An individual's right to a speedy trial attaches when he first becomes "accused." Indictment or the actual restraints of arrest and holding for charges, implicate the speedy trial guarantee. *Salandre*, 111 N.M. at 426, 806 P.2d at 566. Here Defendant's speedy trial rights attached on August 27, 1997, when the State indicted him on four counts of trafficking controlled substances. Approximately two months later, on October 23, 1997, the State served Defendant with a notice of detainer at the California penal institution in which he was serving a sentence on other charges.

{9} The State contends that from the time of the indictment until the day before it served Defendant with the notice of detainer, it did not know Defendant's location. Therefore, it argues, this two-month delay should not weigh against the State. Defendant's analysis of the reason for the delay does not specifically address this two-month period. We will not weigh this portion of the delay against either party.

{10} The next delay was the time between Defendant's October 1997 receipt of the notice of detainer and February 1999, when Defendant requested final disposition of the charges under the IAD, § 31–5–12. Defendant appeals on Sixth Amendment grounds and is not asserting a violation of his rights under the IAD. The State argues, however, that Defendant shoulders some blame for this portion of the delay because he failed to utilize the IAD when he had the opportunity to do so.

{11} Whether and how a defendant's failure to adequately invoke the IAD affects his constitutional right to a speedy trial presents a matter of first impression in New Mexico. This inquiry requires a brief summary regarding what Defendant could have done procedurally under the IAD.

{12} Upon receipt of the notice of detainer, Defendant could have requested that the California prison authorities provide him with IAD paperwork to facilitate his return to New Mexico for trial on the charges, and New Mexico would have been required to bring Defendant to trial within 180 days of his request, absent a showing of good cause for delay. § 31–5–12, art. 3(A). Specifically, Defendant could have activated the IAD immediately by one of three methods: (1) giving his written notice and request for disposition of charges to the appropriate prison officials in California; (2) substantially complying with the IAD by filing the appropriate documents, including a certificate of status, with the proper authorities in New Mexico; or (3) giving actual notice to the proper New Mexico authorities. *Palmer v. Williams*, 120 N.M. 63, 66–67, 897 P.2d 1111, 1114–15 (1995).

{13} On November 5, 1997, approximately two weeks after his receipt of the notice of

detainer, Defendant wrote a letter to the district court clerk in New Mexico requesting information about how to proceed on the detainer. Then, on January 23, 1998, Defendant filed a motion for speedy trial in the district court. On August 12, 1998, Defendant filed a motion to dismiss for failure to comply with his earlier speedy trial request. In 1999 Defendant was transferred to a different California facility, where he filled out IAD paperwork on February 18, 1999. The time between Defendant's receipt of the notice of detainer and his filing of IAD paperwork totals approximately sixteen months.

{14} In its order denying Defendant's motion to dismiss, the district court held that Defendant did not substantially comply with the terms of the IAD, apparently finding that Defendant's attempts to communicate directly with the State did not constitute actual notice to proper New Mexico authorities. *See id.; see also State v. Tarango,* 105 N.M. 592, 595–96, 734 P.2d 1275, 1278–79 (Ct.App. 1987) (stating that where the defendant communicates directly with receiving state, and fails to follow statutory procedure or provide actual notice to the state, the defendant has not met the burden of following requirements of IAD), *overruled on other grounds by Zurla,* 109 N.M. at 645, 789 P.2d at 593. On appeal, Defendant does not challenge the determination that he failed to comply with the IAD. Thus, we accept the district court's findings on this point. *See State v. Weber,* 76 N.M. 636, 644, 417 P.2d 444, 449 (1966) (noting that there is a presumption of correctness in the rulings or decisions of the district court, and the party claiming error bears the burden of showing such error).

{15} Notwithstanding the IAD, however, the Sixth Amendment requires the State to bring a defendant to trial in a timely manner. *State v. Montoya,* 119 N.M. 95, 97, 888 P.2d 977, 979 (Ct.App.1994). Moreover, where a mechanism exists to bring a defendant to trial, the State has a duty to use it. *Zurla,* 109 N.M. at 643–44, 789 P.2d at 588–89. For these reasons a sixteen-month delay would normally weigh heavily against the State.

{16} The State argues that in this case the long delay should not weigh so heavily upon it because Defendant had the ability to end the delay at any time by using IAD procedures to force the State to act. Once Defendant properly exercised his IAD rights, the State promptly acted by accepting custody of Defendant for trial on the pending charges. Thus, argues the State, although both Defendant and the State failed to use the IAD mechanism that was readily available to them, we should weigh this factor only slightly against the State. We disagree.

{17} We are not persuaded that the bare fact that a defendant failed to use IAD procedures, without more, affects our weighing of the reason for delay. This is not to say that a defendant's failure to use IAD procedures could never inform our analysis. For example, if there were evidence that a defendant knew about IAD procedures but declined to use them, such evidence could lessen the State's blame for its failure to bring that defendant to trial. *See, e.g., State v. Goodroad,* 521 N.W.2d 433, 437–39 (S.D. 1994) (finding that twenty months of delay could be attributed in part to the defendant's failure to activate IAD where there was evidence that the defendant knew that he needed to file IAD paperwork to assert his right to a speedy trial and yet he filed no paperwork of any kind); *State v. Jensen,* 818 P.2d 551, 553 (Utah 1991) (finding that failure to utilize IAD undermined the defendant's speedy trial claim where defendant did not assert right and instead had "rigorously tried to avoid trial"); *Miller v. Commonwealth,* 29 Va.App. 625, 513 S.E.2d 896, 898, 900–01 (1999) (declining to weigh nine months of delay against state where the defendant was aware of her rights under the IAD but refused to exercise those rights). In this case, however, there is no evidence that Defendant intentionally declined to use IAD procedures. That Defendant's actions in writing letters to, and filing motions with, the district court, did not conform to IAD procedures would have relevance if Defendant were making an IAD claim, but under these facts it has no bearing on his Sixth Amendment claim. Ac-

cordingly, the sixteen-month delay from Defendant's notice of the detainer until his use of proper IAD procedures weighs heavily against the State.

{18} The balance of the delay is largely either neutral or attributable to Defendant. Defendant filled out appropriate IAD paperwork on February 18, 1999. New Mexico accepted custody of Defendant under the IAD on March 2, 1999, and California returned Defendant to New Mexico on April 2, 1999, for trial on the pending charges. New Mexico arraigned Defendant on April 20, 1999, and Defendant quickly moved to proceed pro se with stand-by defense counsel available for assistance. At this time, standby defense counsel requested that trial not be set until sometime in July 1999 because he would be out of town during June 1999. This portion of the delay weighs against Defendant. *State v. White*, 118 N.M. 225, 226, 880 P.2d 322, 323 (Ct.App.1994) (attributing delay to the defendant when he sought and received new counsel who needed more time to prepare).

{19} The court set the trial for July 19, 1999, but the trial did not occur on this date because of an apparent court backlog. A new trial was set for September 16, 1999. This delay does not weigh heavily against the State or Defendant because it resulted from normal caseload pressures. *See id.* The State grew concerned about the possible expiration of the six-month rule and moved for an extension of time to commence trial, up to and including October 31, 1999. Defendant consented to this delay by concurring in the motion; consequently, we weigh this portion of the delay equally against the State and Defendant. *See State v. Ortiz–Burciaga*, 1999–NMCA–146, ¶ 31, 128 N.M. 382, 993 P.2d 96 (holding that a defendant's consent to delay discharges the State's burden of rebutting the presumption of prejudice). The September 16, 1999, trial date was reset for October 28, 1999, because Defendant requested a continuance. We weigh this portion of the delay against Defendant.

{20} Approximately three weeks before the October trial date, Defendant filed a motion to produce the confidential informant who had witnessed the first drug transaction and the State filed a motion to continue the October trial, based on the fact that its main witness, Agent Cordova, would be out of town. Defendant opposed the State's motion for continuance, but the district court determined that the trial would have to be postponed due to the lateness of Defendant's motion. The court continued the trial into January 2000 and also received an extension of time under the six-month rule from the New Mexico Supreme Court up to and including May 1, 2000. We weigh this portion of the delay slightly against Defendant because it was necessitated by his late filing of his motion to produce the confidential informant. *See Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990); *State v. Grissom*, 106 N.M. 555, 563, 746 P.2d 661, 669 (Ct.App. 1987).

{21} On January 13, 2000, five days before trial, Defendant filed another motion to dismiss for failure to provide him with a speedy trial. The court reset the trial for March 15, 2000, and heard Defendant's motion to dismiss on January 18, 2000. We weigh this delay against Defendant because his late filing of his motion to dismiss required the court to hear Defendant's motion on the scheduled trial date rather than proceeding with the trial as originally planned. *See State v. Benavidez*, 1999–NMCA–053, ¶ 39, 127 N.M. 189, 979 P.2d 234, *rev'd on other grounds*, 1999–NMSC–041, ¶ 2, 128 N.M. 261, 992 P.2d 274.

{22} The State finally tried Defendant on March 15, 2000, but the trial resulted in a hung jury and a new trial was held on July 21, 2000. The jury convicted Defendant of the charges at this trial.

{23} In summary, the longest portion of delay—sixteen months—weighs heavily against the State. Approximately three months weigh slightly against Defendant, and five months weigh more heavily against Defendant. The balance of the delay is either neutral or slightly against the State. Overall, therefore, this prong of the *Barker* analysis weighs against the State.

*Defendant's Assertion of the Right to a Speedy Trial*

{24} Defendant asserted his right to a speedy trial early on in this case. On November 5, 1997, within two weeks of receiving his notice of detainer, Defendant wrote to the Doña Ana County District Court clerk's office seeking information on what to do about the detainer. Apparently nothing ever came of this letter, and on January 23, 1998, Defendant filed his first motion for speedy trial in the district court. The State received a copy of this motion. On August 12, 1998, Defendant filed a motion to dismiss for failure to comply with his earlier speedy trial request. The State urges that although Defendant's assertion of his rights weighs in his favor, we should lessen weight of this prong in his favor because he could have asserted his rights more expeditiously by filling out the IAD paperwork sooner. In our view, that Defendant could have used IAD paperwork does not lessen the importance of the fact that he made several assertions of his right to a speedy trial, and he did so early in the proceedings. *Cf. State v. Santonelli*, 600 S.W.2d 205, 207 (Mo.Ct.App. 1980) (holding that the defendant's admittedly intentional failure to sign IAD paperwork cut against his Sixth Amendment claim where the defendant first asserted his right to a speedy trial on the day of trial). We therefore weigh this factor unequivocally against the State. *See Zurla*, 109 N.M. at 644, 789 P.2d at 592.

*Prejudice to Defendant*

{25} The right to a speedy trial is intended to prevent or minimize three types of prejudice to a defendant: (1) oppressive pretrial incarceration, (2) anxiety and concern, and (3) the possibility of impairment to the defense. *Id.* Of these, possible impairment to the defense is the most serious. *Id.* We will address only Defendant's arguments that he was prejudiced by oppressive pretrial incarceration and by the possibility of impairment to the defense. While his appeal mentions anxiety and concern, he did not argue this type of prejudice below, and the issue is not preserved. *See State v. Muise*, 103 N.M. 382, 386, 707 P.2d 1192, 1196 (Ct.App.1985) (stating that "[o]n appeal, [the] reviewing court will not consider issues not raised in the trial court").

{26} Defendant advances only one persuasive theory relating to oppressive pretrial incarceration, which is that he lost the possibility of serving any sentence he received in this case concurrently with the sentence he was serving in California. The New Mexico Supreme Court has held that loss of the possibility of serving sentences concurrently should be considered an element of oppressive pretrial incarceration. *Zurla*, 109 N.M. at 645, 789 P.2d at 593. The State concedes that Defendant suffered "some prejudice" in this regard.

{27} Defendant argued below that he was prejudiced because the existence of the detainer altered his California prison classification. On appeal, however, while Defendant's summary of the proceedings references the argument made below, he does not brief the argument and we therefore consider it abandoned. *See State v. Desnoyers*, 2002 NMSC 031, ¶ 11, 132 N.M. 756, 55 P.3d 968 (explaining that arguments that are unsupported by argument or authority are deemed abandoned).

{28} Raising the third kind of prejudice defined in *Barker*, Defendant claims that his defense was harmed by the delay. He argues that because of the delay, no one was able to locate the confidential informant, and that the informant could have discounted the State's theory that Defendant was the person who sold drugs to Agent Cordova. The State maintains there is no basis for believing that the confidential informant's testimony would have conflicted with that of Agent Cordova. We are persuaded by the State's position because Agent Cordova identified Defendant in a photo provided by another law enforcement agent between the dates of the two drug sales, and he identified Defendant in court as the same person who sold him drugs. *See State v. Lucero*, 91 N.M. 26,

28, 569 P.2d 952, 954 (Ct.App.1977) (holding that the defendant's claim concerning loss of witnesses was "insufficient because defendant made no showing as to what testimony ha[d] been lost"); *State v. Harvey,* 85 N.M. 214, 219, 510 P.2d 1085, 1090 (Ct.App.1973) (holding that where the defendant's claims of misidentification and alibi were not credible, claim of prejudice was equivocal at best and would not be weighed in the defendant's favor). Defendant makes no showing that the informant would have contradicted the State's theory in any way, and we therefore reject Defendant's speculative argument. *See Lucero,* 91 N.M. at 28, 569 P.2d at 954.

*Balancing the Four Factors*

{29} Balancing the *Barker* factors is not a mechanical process. *State v. Marquez,* 2001–NMCA–062, ¶ 9, 130 N.M. 651, 29 P.3d 1052. The factors are related and must be considered in light of all the relevant circumstances. *Plouse,* 2003–NMCA–048, ¶ 55, 133 N.M. 495, 64 P.3d 522. At best, Defendant's showing of prejudice is akin to the "equivocal" showing of the defendant in *Harvey,* 85 N.M. at 219, 510 P.2d at 1090. The minimal prejudice appears even less than in *Zurla,* where this factor weighed only slightly in the defendant's favor. *Zurla,* 109 N.M. at 648, 789 P.2d at 596. Having said that, given the context of a long and largely unexplained delay by the State, as well as the demands by Defendant for a speedy trial, we cannot permit the relative lack of prejudice to outweigh all the other factors; to do so "would in effect attribute to this factor 'talismanic qualities' antithetical to the understanding that animated *Barker.*" *Zurla,* 109 N.M. at 648, 789 P.2d at 596. Here, every factor other than prejudice weighs in Defendant's favor, and the long delay in particular weighs significantly in his favor. In some cases, an exceptionally strong showing on any one factor may be dispositive. *Salandre,* 111 N.M. at 430, 806 P.2d at 570. However, we need not determine whether the long delay, on its own, would resolve the balancing test in Defendant's favor because Defendant has three factors in his favor. *Cf. Plouse,* 2003–NMCA–048, ¶ 55, 133 N.M. 495, 64 P.3d 522 (applying *Barker* factors to reject speedy trial claim where length of delay was in the defendant's favor but remaining three factors weighed against the defendant). With three factors squarely for Defendant, even though the fourth factor of prejudice is only minimally in Defendant's favor, on balance we hold that the State failed to meet its burden of demonstrating that it did not violate Defendant's Sixth Amendment right to a speedy trial.

## CONCLUSION

{30} For the foregoing reasons, we hold that the State violated Defendant's constitutional right to a speedy trial. We therefore remand for the district court to set aside the judgment and sentence and to enter an order dismissing the charges against Defendant.

{31} **IT IS SO ORDERED.**

WE CONCUR: A. JOSEPH ALARID and JONATHAN B. SUTIN, Judges.