2007-NMCA-102

166 P.3d 461

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Todd MADDOX, Defendant–Appellant.**

No. 25,404.

Court of Appeals of New Mexico.

June 15, 2007.

Certiorari Granted, No. 30,526,
Aug. 8, 2007.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BUSTAMANTE, Judge.

{1} Defendant appeals his conviction and sentence for the unlawful taking of a motor vehicle on the grounds that the State's delay in prosecuting his case violated his Sixth Amendment right to a speedy trial. We reverse and take this opportunity to clarify some of our prior case law regarding the State's duty to bring a defendant to trial within a reasonable amount of time.

## BACKGROUND

{2} On September 21, 2001, a grand jury indicted Defendant on alternative charges of unlawful taking of a vehicle ($2,500 or more), contrary to NMSA 1978, § 66–3–504(A)(2) (1998), or embezzlement (over $2,500), contrary to NMSA 1978, § 30–16–8 (1995) (amended 2006). The charges in the indictment stemmed from Defendant's alleged unlawful taking of a 1994 Mercury Cougar on August 8, 2000. The State was unaware of Defendant's whereabouts at the time of the indictment. Following a period of nearly fifteen months, the State discovered that Defendant had been incarcerated in a Florida prison and, on December 13, 2002, the State lodged a detainer against him on an unrelated probation violation.

{3} Counsel for Defendant entered an appearance and demand for speedy trial on March 10, 2003. The following month. Defendant mailed a demand for a speedy resolution of the charges against him under the Interstate Agreement on Detainers (IAD). Then, between April 18 and 24, 2003, defense counsel informed the prosecutor through a series of emails that Defendant was located in Florida, had made the aforementioned request for a speedy disposition under the IAD, and sought to negotiate a plea agreement. Defendant later sent another demand for resolution of the charges under the IAD, which the district attorney's office received on June 16, 2003.

{4} Defendant completed his Florida sentence on July 14, 2003. and was transported to New Mexico on the same day. Defendant was arraigned on July 28, 2003, and had a $7000 bond placed on him. Intermittent plea negotiations took place over the next several months. culminating in Defendant's rejection of the State's final plea offer on December 17, 2003. Shortly thereafter, the State filed a petition under Rule 5–604 NMRA to extend the deadline for trial, which was originally set for January 20, 2004. Defense counsel filed a motion to dismiss on January 15, 2004, asserting, among other things, that the State had violated Defendant's right to a speedy trial under the federal and state constitutions. The district court continued the January 20, 2004, trial setting and instead heard Defendant's motion to dismiss on that day.

{5} Defense counsel argued at the hearing that, using the analysis set forth in *Barker v. Wingo,* 407 U.S. 514, 530–33, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the State violated Defendant's Sixth Amendment right to a speedy trial. More specifically, defense counsel claimed that: (1) the delay in this case was presumptively prejudicial, (2) the State delayed bringing Defendant to trial intentionally and for tactical reasons, (3) Defendant asserted his right to a speedy trial in March and April of 2003, and (4) the delay prejudiced Defendant in that he lost the opportunity to serve part of his Florida prison term concurrently with his sentence in the present case, in addition to suffering anxiety. Counsel for the State claimed that only the delay between April and June of 2003 was attributable to the State.

{6} The district court was not persuaded that the delay was intentional and found that it was probably due to bureaucratic indifference. The court also was unable to find that Defendant had suffered "any great amount of prejudice." The court further held that only nine months of delay were at issue, which

was not enough to find a per se violation of Defendant's right to a speedy trial. The court therefore denied Defendant's motion to dismiss. Defendant entered a conditional guilty plea, reserving his right to appeal the denial of his motion to dismiss. This appeal timely followed.

{7} We initially proposed to summarily reverse Defendant's conviction for violation of his right to a speedy trial. The State filed a memorandum in opposition, and we remanded the case to the district court for entry of written findings of fact and conclusions of law relating to the four *Barker* factors, with specific emphasis on the plea negotiations between the parties. We noted in our order remanding the case that the record revealed little at that point about whether there had been any agreement between the parties to stay the proceedings or for Defendant to waive his speedy trial rights during the plea negotiations. The district court thereafter entered its written findings and conclusions. Unfortunately, however, the district court's findings and conclusions shed no further light on whether Defendant agreed to waive his speedy trial rights during the period of plea negotiations. Given this factual and procedural backdrop, we now turn to the merits of Defendant's appeal.

**DISCUSSION**

{8} The Sixth Amendment to the United States Constitution provides that the accused in a criminal prosecution "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. The speedy trial right is "generically different" from other constitutional rights in that it protects the interests of society as well as those of the accused. *Barker*, 407 U.S. at 519, 92 S.Ct. 2182. Thus, "when the state has delayed trial unnecessarily in neglect of its role as the representative of society's interests, a defendant's speedy trial claim becomes, in effect, the vehicle by which society's interests may be vindicated." *Salandre v. State*, 111 N.M. 422, 427, 806 P.2d 562, 567 (1991) (citation omitted).

{9} In *Barker*, the United States Supreme Court established a balancing test for analyzing speedy trial claims, which includes four factors: (1) the length of the delay, (2) the reasons the government pro-

vides to justify the delay, (3) whether and how the defendant asserts his or her right to a speedy trial, and (4) whether the delay has prejudiced the defendant. 407 U.S. at 530–33, 92 S.Ct. 2182. We review a district court's ruling on a speedy trial claim by deferring to the district court's findings of fact while independently examining the four *Barker* factors to determine whether a violation has taken place. *State v. Urban,* 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. We analyze speedy trial claims on a case-by-case basis, examining "all four factors in order to weigh the conduct of both the prosecutor and defense. and no one factor is talismanic." *Id.*

{10} Before we can begin the process of balancing the four *Barker* factors, we must first determine whether the delay is presumptively prejudicial. *State v. Laney*, 2003–NMCA–144, ¶ 11, 134 N.M. 648, 81 P.3d 591. If we find that the delay is presumptively prejudicial, "the burden of persuasion shifts to the State to show that, considering the four factors as a whole. the defendant's constitutional rights have not been violated." *Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. In this sense, the length of delay variable serves a gatekeeping function in addition to its role as one of the factors in the *Barker* balancing test. *See Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061 (explaining that "length of the delay[ ] serves two functions."); *see also Salandre*, 111 N.M. at 428, 806 P.2d at 568 ("Length of the delay acts as a rough measure of whether further inquiry is warranted.") (internal quotation marks, citation and alteration omitted). Our Supreme Court has set forth three time limits beyond which it considers a delay to be presumptively prejudicial: nine months for a case of low or "simple" complexity: twelve months for cases of intermediate complexity; and fifteen months for highly complex cases. *Salandre*, 111 N.M. at 428 & n. 3, 806 P.2d at 568 & n. 3.

{11} The parties agree that Defendant's right to a speedy trial attached when he was indicted on September 21, 2001, and that this is a case of low complexity. The State argues that, of the total twenty-eight-

month delay between the indictment and the entry of Defendant's plea, only the thirteen months from December 13, 2002, when the State became aware of Defendant's location in Florida, to January 20, 2004, when Defendant pled guilty, are at issue. The State concedes, however, that even a thirteen-month delay is presumptively prejudicial because this is a simple case. We agree that the delay in this case is presumptively prejudicial, although we do not necessarily agree that only thirteen of the total twenty-eight months are at issue, which we address in more detail below. Because we find that the presumption of prejudice has been met, we now turn to our examination of the four *Barker* factors.

## 1. Length of Delay

{12} "When the state has delayed long past the time considered presumptively prejudicial, its burden to show on the record that defendant's right to a speedy trial was not violated becomes correspondingly heavier." *Salandre,* 111 N.M. at 429, 806 P.2d at 569 (footnote omitted): *see also State v. Marquez,* 2001–NMCA–062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 ("The presumption that pretrial delay has prejudiced the accused intensifies over time.") (internal quotation marks, citation and alteration omitted). Moreover, when assigning weight to the length of delay factor, "we consider that the delay the law can tolerate in the prosecution of a simple crime is considerably less than can be tolerated for a serious. complex crime." *State v. Lujan (Richard Lujan),* 2003–NMCA–087, ¶ 6, 134 N.M. 24, 71 P.3d 1286.

{13} As mentioned previously, the total length of delay from the indictment to the entry of Defendant's plea was twenty-eight months, over three times the length of time considered to be presumptively prejudicial for a simple case. Although the State argues that only thirteen months are at issue because it was unaware of Defendant's whereabouts for fifteen months, that argument goes to the reasons for the delay, which we address in the next section. Accordingly, we find that the length of the delay in this simple case weighs heavily against the State.

*See id.; Marquez,* 2001–NMCA–062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (weighing heavily against the State a delay of nine months beyond the presumptively prejudicial period for a simple case).

## 2. Reasons for the Delay

{14} When examining the reasons for the delay, we "allocat[e] the reasons . . . to each side and determin[e] the weight attributable to each reason." *State v. Plouse,* 2003–NMCA–048, ¶ 45, 133 N.M. 495, 64 P.3d 522 (internal quotation marks and citation omitted). "[W]e must bear in mind that (1) the four *Barker* factors are interrelated and must be evaluated in light of the particular circumstances of the case and (2) we should compare the conduct of the State and Defendant." *Marquez,* 2001–NMCA–062, ¶ 13, 130 N.M. 651, 29 P.3d 1052. Our analysis is further informed by the well-established principle that the responsibility for bringing a case to trial within a reasonable amount of time rests primarily with the State. *Id.* ¶ 8; *Richard Lujan,* 2003–NMCA–087, ¶ 15, 134 N.M. 24, 71 P.3d 1286 ("[T]he Sixth Amendment requires the State to bring a defendant to trial in a timely manner."). "The State has a constitutional duty to make a diligent, goodfaith effort to bring Defendant to trial." *Marquez,* 2001–NMCA–062, ¶ 15, 130 N.M. 651, 29 P.3d 1052. "[W]here a mechanism exists to bring a defendant to trial, the State has a duty to use it." *Richard Lujan,* 2003–NMCA–087, ¶ 15, 134 N.M. 24, 71 P.3d 1286.

### a. Periods of Delay in Which the State Is Unaware of a Defendant's Location

{15} The State argues that the fifteen months between the indictment and December 13, 2002, the date that the State lodged a detainer against Defendant in Florida, should not be weighed against it because the State was unaware of Defendant's location during that period. The State cites to *Richard Lujan* and *State v. Tarango,* 105 N.M. 592, 734 P.2d 1275 (Ct.App.1987), *overruled on other grounds by Zurla v. State,* 109 N.M. 640, 645, 789 P.2d 588, 593 (1990), as support for the proposition that we should not count against the State any delay taking

place while the State is unaware of a defendant's whereabouts. *See Richard Lujan,* 2003–NMCA–087, ¶ 9, 134 N.M. 24, 71 P.3d 1286 (declining to weigh against either side a two-month period during which the State was unaware of the defendant's location); *see also Tarango,* 105 N.M. at 598, 734 P.2d at 1281 (holding that, after the defendant had escaped from custody, "[t]he state cannot be held responsible for any delay prior to the point where it was notified of defendant's whereabouts"). We are not convinced that these cases support the State's argument.

{16} First, the situation in *Richard Lujan* is distinguishable from the present case in that the period during which the State was unaware of the defendant's whereabouts in *Richard Lujan* was two months, which comprised only a fraction of the nearly three-year delay in that case. 2003–NMCA–087, ¶¶ 5, 9, 134 N.M. 24, 71 P.3d 1286. Moreover, we noted in *Richard Lujan* that the defendant failed to specifically address the two-month period in its analysis of the reasons for delay. *Id.* ¶ 9. In contrast, there is a delay of fifteen months in the present case—more than half of the overall twenty-eight-month delay—during which the State was unaware of Defendant's location. Although Defendant in the present case has not fully developed this argument, he does allege, albeit somewhat indirectly, that it was the State's duty to locate him during this period. Thus, while the State is correct that we did not weigh the two-month period in *Richard Lujan* against either party, that aspect of our holding was made in the broader context of our analysis of the four *Barker* factors; it cannot be viewed as setting forth a general rule that, when the State is unaware of a defendant's whereabouts, it may shirk its "constitutional duty to make a diligent, good-faith effort to bring Defendant to trial." *Marquez,* 2001–NMCA–062, ¶ 15, 130 N.M. 651, 29 P.3d 1052.

{17} Second, our holding in *Tarango* was informed by the fact that the defendant in that case had escaped from the State's custody. 105 N.M. at 598, 734 P.2d at 1281 ("Where [a] defendant causes or contributes to a delay, he cannot complain of the denial of a speedy trial."). Although one of the

district court's conclusions of law in the present case was that Defendant "complicated" matters by leaving New Mexico and by committing a new offense in Florida, we do not see the legal basis for this ambiguous conclusion; Defendant was not arrested at the time of the alleged offense, and there is nothing in the record suggesting that he was not free to be outside of New Mexico at the time of the indictment. The State's citation to *Tarango* is therefore inapposite.

{18} In the present case, the record is largely undeveloped with regard to the fifteen-month period following Defendant's indictment. However, because the overall twenty-eight-month delay created a presumption of prejudice shifting the burden of persuasion to the State, *see Urban,* 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. and because it was the State's "constitutional duty to make a diligent, good-faith effort to bring Defendant to trial." *Marquez,* 2001–NMCA–062, ¶ 15, 130 N.M. 651, 29 P.3d 1052, we hold that the State was required to make some affirmative showing that a fifteen-month delay was reasonable under these circumstances. Put another way. the State was required to do more than merely claim that it was unaware of Defendant's location; the State should have affirmatively explained why it could not reasonably have been expected to bring Defendant to trial during that time. *Cf. Urban,* 2004–NMSC–007, ¶ 15, 135 N.M. 279, 87 P.3d 1061 (weighing delay against the State where the defendant was in the State's custody and, despite improvements in information technology, the State "offered no reasonable explanation why it was not aware—or why it could not have become aware—that Defendant was in its custody.").

{19} The State failed to carry its burden in this regard. The record does not reveal how the State eventually became aware of Defendant's location in Florida. It is therefore unclear whether the State discovered Defendant's location through means it could have reasonably employed prior to December 13, 2002. For example, if the State discovered Defendant's whereabouts by simply speaking to members of his family, there would be no reason why such efforts could not have been

made earlier. In contrast, if Defendant were actively-evading detection by the State, perhaps by using false identification or by frequently changing locations, the State could then show that the resulting delay would be attributable to Defendant. *See id.* ¶ 14 (weighing delay against the State where the record did not show that the defendant was attempting to evade service of the indictment).

{20} In reality, however, we know that Defendant was incarcerated in a Florida prison at the time of his indictment. Thus, in comparing the conduct of the State and Defendant during this period of time, we note that, as a prison inmate, it is unlikely that Defendant could have done much to obstruct the State from prosecuting him. In contrast, the State may or may not have had means available to it to locate Defendant—eventually it was able to do so—and it was the State's burden to explain why those means were not reasonably employable prior to December 13, 2002. The State made no such showing. Therefore, because the State failed to carry its burden, and in light of the undeveloped record with respect to this particular time frame, we weigh the fifteen-month period against the State. *See Marquez,* 2001–NMCA–062, ¶ 16, 130 N.M. 651, 29 P.3d 1052 (weighing against the State a period of delay for which the State did not meet its burden of showing that delay was reasonable).

**b. Periods of Delay For Which the State Provides No Explanation**

■ {21} We next consider the more than four-month period of delay taking place between the State's discovery of Defendant's location in Florida on or about December 13, 2002, and April 24, 2003, when defense counsel had informed the prosecutor of Defendant's request for a speedy disposition of his charges under the IAD and his desire to enter into a plea agreement. The State has provided no explanation for this period of delay. Instead, the State points to the fact that defense counsel informed the prosecutor on April 24, 2003, that Defendant had already completed the IAD paperwork necessary to effect his return to New Mexico. Thus, the State argues, it was not unreasonable for the

prosecutor to have failed to file similar paperwork to effect the same result. This argument ignores the fact that it was the State's responsibility to bring Defendant to trial. *Id.* ¶ 8. Accordingly, we weigh this period heavily against the State. *See Richard Lujan,* 2003–NMCA–087, ¶ 17, 134 N.M. 24, 71 P.3d 1286 (holding that, where the defendant attempted to invoke IAD procedures, the "delay from Defendant's notice of the detainer until his use of proper IAD procedures weighs heavily against the State"); *Marquez,* 2001–NMCA–062, ¶ 16, 130 N.M. 651, 29 P.3d 1052 (weighing a period against the State when the State failed to meet its burden of showing reasonableness).

**c. Periods of Delay During Which the Parties Engage in Plea Negotiations**

■ {22} Lastly, we examine the remaining nine-month period between April 24, 2003, and January 20, 2004. when Defendant entered his plea. The State argues that we should not weigh this period against it because the parties were engaged in intermittent plea negotiations. As support for this argument, the State cites to three cases as standing for the proposition that a period of delay in which plea negotiations take place should not be weighed against either party. *See Marquez,* 2001–NMCA–062, ¶ 18, 130 N.M. 651, 29 P.3d 1052 (declining to weigh a period of plea negotiations against either party); *State v. Eskridge,* 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502 (holding that "[t]he plea negotiations are themselves not a factor to be held against either party"); *State v. Lujan (Arthur Lujan),* 112 N.M. 346, 350, 815 P.2d 642, 646 (Ct.App.1991) (holding that the question of whether "attempted plea negotiations constitute a valid reason for delay ... involves a factual issue to be determined by the trial court under the facts and circumstances of each particular case"). We take this opportunity to clarify the case law on this point.

{23} We first addressed the issue of whether a delay resulting from plea negotiations is chargeable against either party in *Arthur Lujan,* 112 N.M. at 349, 815 P.2d at 645. The State argued in that case that the delay associated with plea negotiations

should not be charged against it because the negotiations were for the defendant's benefit. *Id.* The defendant responded by pointing out that plea negotiations can proceed all the way until the jury returns a verdict: thus, the State's argument, if accepted, would essentially nullify the constitutional right to a speedy trial. *Id.* We held that the State's position was "too sweeping in its effect." *Id.* Instead, we concluded that

> [i]n the absence of facts indicating an express or implicit agreement between the parties to stay the time within which to bring defendant's case to trial within the speedy trial requirements of the sixth amendment, we ... decline to automatically adopt a per se rule attributing delay resulting from attempted plea negotiations to a specific party.... [T]he extent to which attempted plea negotiations constitute a valid reason for delay or should be charged against the state, defendant or both parties involves a factual issue to be determined by the trial court under the facts and circumstances of each particular case.

*Id.* at 350, 815 P.2d at 646 (citations omitted).

{24} Examining the stipulated evidence in *Arthur Lujan*, we found that the prosecution had delayed in responding to several of the defendant's attempts to negotiate a plea bargain. *Id.* Additionally, we noted that "the primary responsibility for according defendant his right to [a] speedy trial rests with the state." *Id.* We concluded that "the unsuccessful plea negotiations ... did not constitute a valid reason for suspending the time period with regard to defendant's right to a speedy trial" and therefore charged the period of delay against the State. *Id.* We further held that, although the reasons for delay weighed against the Stale. they did not weigh heavily. *Id.* Thus, we explicitly rejected the idea that the State's reference to plea negotiations alone could satisfy its burden of showing a valid reason for delay.

{25} In *Eskridge*, we weighed the period of plea negotiations against the defendant because his attorney had agreed to a later trial setting and requested a continuance. 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502. In our analysis of the reasons for delay, we cited *Arthur Lujan*, stating rather succinctly that "[t]he plea negotiations are *themselves* not a factor to be held against either party." *Eskridge*, 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502 (emphasis added). While this statement is technically correct, it is susceptible to the incorrect interpretation that the State urges in the present case. i.e., that periods of delay in which plea negotiations take place should not be counted against either party. However, our conclusion in *Eskridge* that the period in question weighed against the defendant contradicts the State's interpretation, as does our conclusion in *Arthur Lujan* that the State was responsible for the delay in that case. We note that the plea negotiations *themselves* neither weighed against the defendant in *Eskridge*, nor against the State in *Arthur Lujan*. In *Eskridge*, it was the defendant's agreement, through his attorney, to delay the trial setting that weighed against him. 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502. In *Arthur Lujan*, it was the State's delay in responding to the defendant's plea offers that weighed against it. 112 N.M. at 350, 815 P.2d at 646.

{26} We reiterate that the existence of plea negotiations during a period of delay does not alone constitute a valid *reason* for that delay; there is a significant difference between a delay that in some way results from plea negotiations and a delay that is merely contemporaneous with plea negotiations. As we indicated in *Arthur Lujan*, plea negotiations may continue throughout trial and up until the jury renders a verdict. 112 N.M. at 349, 815 P.2d at 645. Therefore, absent an agreement by the defendant to suspend proceedings or waive his or her speedy trial right, there is nothing inherent to the process of negotiating a plea that obviates the State's duty to bring the defendant to trial in a timely fashion. Furthermore, because society has an interest in the efficient administration of justice, *see Barker,* 407 U.S. at 519, 92 S.Ct. 2182, a defendant's speedy trial right should, until waived, remain an incentive for the State to promptly bring about the disposition of the case. *See Salandre,* 111 N.M. at 427, 806 P.2d at 567 ("[A] defendant's speedy trial claim [can be-

come] ... the vehicle by which society's interests may be vindicated.").

{27} In addition to *Eskridge* and *Arthur Lujan*, the State cites to *Marquez* as standing for the proposition that a period of plea negotiations should not be weighed against either party. In *Marquez*, we cited *Eskridge* as support for our statement that "[w]e do not weigh the period of plea negotiations against either party." 2001–NMCA–062, ¶ 18, 130 N.M. 651, 29 P.3d 1052 (citing *Eskridge*, 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502). This statement, like the one in *Eskridge*, is technically correct, yet misleading. Read in isolation, this sentence appears to state a general rule, i.e., that we do not weigh a period of plea negotiations against either party when conducting a speedy trial analysis. However, when read in conjunction with the following sentence, which states that "[w]e instead weigh this five-month period of time neutrally between the parties," *Marquez*, 2001–NMCA–062, ¶ 18, 130 N.M. 651, 29 P.3d 1052, it becomes clear that we were referring to the facts and circumstances of that case and did not intend to set forth a general rule. Accordingly, where plea negotiations do not constitute a valid reason for a period of delay, the burden of justifying the delay remains with the State.

{28} In the present case, the State attributes the nine-month delay between April 24, 2003, and January 20.2004. to the fact that intermittent plea negotiations took place during that time. The State fails to cite, nor are we able to find, anything in the record suggesting that its plea negotiations with Defendant somehow caused it to delay the prosecution of Defendant's case. Nor does the State suggest that Defendant expressly or implicitly acquiesced in this period of delay. Although "the extent to which attempted plea negotiations constitute a valid reason for delay ... involves a factual issue to be determined by the trial court under the facts and circumstances of each particular case." *Arthur Lujan*, 112 N.M. at 350, 815 P.2d at 646, the district court in the present case made no findings in this respect, either during the hearing on Defendant's motion to dismiss, or in the court's written findings and conclusions following remand. Instead, the district court merely set forth the time line of plea negotiations in its written findings of fact.

{29} We see nothing in the record, nor in the district court's findings, that would suggest that the State has met its burden in justifying this nine-month period of delay. Although the State makes passing reference to the effect of bureaucratic factors, such as the time required to transport Defendant to New Mexico and the prosecutor's overall caseload, this argument is unpersuasive under the totality of the circumstances present in this case. *See Laney*, 2003–NMCA–144, ¶ 17, 134 N.M. 648, 81 P.3d 591 ("Intermediate categories of delay, such as bureaucratic indifference or failure to take reasonable means to bring a case to trial, are considered more culpable and weigh more heavily against the State, especially if the defendant has sought to safeguard his rights."); *see also Zurla*, 109 N.M. at 643, 789 P.2d at 591 (holding that the weight attributable to the State's "negligent delay" increased with passage of time during which no effort was made to locate the defendant and due to the defendant's early assertion of his speedy trial rights). In comparing the conduct of the State with Defendant's conduct during this period, we note that Defendant made two attempts to resolve the charges against him under the IAD. and that his attorney made the initial effort to begin plea discussions. The State, for its part, did little more during this period than engage in intermittent plea negotiations with Defendant. Because the State provided no other valid reason to justify this period of delay, we weigh this period against the State somewhat heavily.

### 3. Defendant's Assertion of His Right to a Speedy Trial

{30} In weighing Defendant's assertions of his right to a speedy trial, we examine "the timing and manner in which Defendant asserted his right." *Laney*, 2003–NMCA–144, ¶ 23, 134 N.M. 648, 81 P.3d 591.

A defendant does not have a duty to bring himself to trial, and a speedy trial violation may be found even when the defendant has not asserted the right.

Nevertheless, the assertion of the right is entitled to strong evidentiary weight in deciding whether a speedy trial violation has taken place.... An early assertion of the speedy trial right indicates the defendant's desire to have the charges resolved rather than gambling that the passage of time will operate to hinder prosecution.

*Zurla*, 109 N.M. at 644, 789 P.2d at 592(citation omitted).

{31} Defendant first asserted his right to a speedy trial on March 10, 2003. when defense counsel filed a pro forma demand for a speedy trial. Defendant also twice filed paperwork pursuant to the IAD, in April and June of 2003. seeking speedy resolution of the charges against him. Although Defendant's use of IAD procedures may have been flawed, this "does not lessen the importance of the fact that [Defendant] made several assertions of his right to a speedy trial, and he did so early in the proceedings." *Richard Lujan*, 2003–NMCA–087, ¶ 24, 134 N.M. 24, 71 P.3d 1286. Additionally, Defendant opposed the State's motion to extend the trial deadline in late December of 2003. and Defendant filed a motion to dismiss for violation of his speedy trial right in January of 2004. Accordingly, we conclude that this third factor weighs substantially in Defendant's favor.

### 4. Prejudice

{32} "The right to a speedy trial is intended to prevent or minimize three types of prejudice to a defendant: (1) oppressive pretrial incarceration, (2) anxiety and concern, and (3) the possibility' of impairment to the defense." *Id.* ¶ 25. "To support a finding of prejudice, the evidence must show a nexus between the undue delay in the case and the prejudice claimed." *Laney*, 2003–NMCA–144, ¶ 25, 134 N.M. 648, 81 P.3d 591 (internal quotation marks, alteration and citation omitted). The most serious of the three types of prejudice is the possible impairment to the defense. *Richard Lujan*, 2003–NMCA–087, ¶ 25, 134 N.M. 24, 71 P.3d 1286.

{33} Defendant argues that he suffered oppressive pretrial incarceration because he lost the opportunity to serve part of his Florida sentence concurrently with his sentence in this case. We may consider Defendant's lost opportunity to serve concurrent sentences as an element of oppressive pretrial incarceration. *Id.* ¶ 26. The State asserts that we should not assign any weight to this claim of prejudice because Defendant's Florida sentence expired on July 14, 2003, and the State's delay in prosecuting the case did not become presumptively prejudicial until September 13, 2003, nine months after it discovered Defendant's whereabouts and placed a detainer on him. Thus, the State argues, Defendant completed his Florida sentence well before the State was required to bring him to trial.

{34} We disagree. As discussed above, the State's delay in prosecuting the case became presumptively prejudicial in June of 2002—nine months following Defendant's indictment—even though the State was unaware of his location. Again, the State failed to carry its burden in justifying the fifteen-month delay between the indictment and the December 13, 2002, detainer. Therefore, having failed to rebut the presumption of prejudice, the record supports Defendant's assertion that, had the State timely brought him to trial, he would have had an opportunity to serve his sentences concurrently. We conclude that this factor weighs slightly in Defendant's favor. *Id.* ¶¶ 26, 29.

{35} Defendant also argues that he suffered anxiety and concern over the charges against him, from December of 2002, when the detainer was lodged against him. until his plea hearing in January of 2004. Notwithstanding the fact that the State placed the detainer on Defendant based on an unrelated matter, and therefore Defendant likely discovered the charges against him sometime afterward, we note that "the focus of our inquiry in a speedy trial analysis is on undue prejudice. Some degree of oppression and anxiety is inherent for ever defendant who is jailed while awaiting trial." *Laney*, 2003–NMCA–144, ¶ 29, 134 N.M. 648, 81 P.3d 591 (citation omitted). Defendant has not set forth how the anxiety and concern he experienced as a result of the delays in this case are atypical of that experienced

by any criminal defendant awaiting trial. Although Defendant does not bear the burden of persuasion in this context, he does bear a burden of production. *Zurla,* 109 N.M. at 646, 789 P.2d at 594. Because Defendant failed to present specific facts showing that he suffered undue anxiety and concern over the charges in the present case, we accord no weight to Defendant's claim of prejudice in this regard.

{36} Finally, Defendant asserts generally that the excessive delays in this case impaired his defense because they would have presumptively compromised the reliability of a trial. Although Defendant cites a series of cases as support for this assertion, he still fails to set forth any specific allegations of prejudice and has thus not met his burden of production on this point. Accordingly, we assign no weight to this claim of prejudice. *Work v. State,* 111 N.M. 145, 148, 803 P.2d 234, 237 (1990) (stating that when the defendant fails to corroborate the presumption of prejudice, it remains a probability entitled to more or less weight depending on the other factors).

## CONCLUSION

{37} We conclude that, considering the four *Barker* factors together, the State violated Defendant's Sixth Amendment right to a speedy trial. The district court erred in denying Defendant's motion to dismiss because its ruling w as based on an improperly calculated time frame and the apparent lack of prejudice to Defendant. However, the *Barker* factors are to be weighed collectively, "and no one factor is talismanic." *Urban,* 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. We agree that the prejudice factor weighs only slightly in Defendant's favor. However, all four factors weigh in Defendant's favor to one degree or another; the delay in this case stretches well beyond the minimum to be considered presumptively prejudicial, the State failed to carry its burden in justifying the delay. Defendant asserted his right to a speedy trial early and often, and Defendant suffered slight prejudice as a result of the delay. We therefore reverse Defendant's conviction and remand for proceedings consistent with this opinion.

{38} **IT IS SO ORDERED.**

I CONCUR: JAMES J. WECHSLER, Judge.

IRA ROBINSON, Judge, (dissenting).

ROBINSON, Judge (dissenting).

{39} I do not agree with the Majority. I am convinced that a delay due to plea negotiations should not be held against either the State or Defendant. *State v. Eskridge,* 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502. If the record would clearly show that one party did not negotiate in good faith during plea negotiations, or stalled such negotiations, I would perhaps agree with the Majority, but that is not the case here.

{40} While I agree that the State has "a constitutional duty to make a diligent, good-faith effort to bring Defendant to trial," *Marquez,* 2001–NMCA–062, ¶ 15, 130 N.M. 651, 29 P.3d 1052, I do not agree with the Majority's conclusion that "the State should have affirmatively explained why it could not reasonably have been expected to bring Defendant to trial during that time." *Cf. Urban,* 2004–NMSC–007, ¶ 15, 135 N.M. 279, 87 P.3d 1061. The Majority's reliance on *Urban* is misplaced because in *Urban,* the defendant was in the State of New Mexico's custody. In the case at bar, Defendant was in the State of Florida's custody, about two thousand miles away. Clearly, the State should be held to know if someone is right here in a New Mexico jail, but how can the Majority hold the State responsible for not knowing which of the other forty-nine states might have him in their jail or prison? In fact, the State did not know if Defendant was in prison anywhere.

{41} Defendant was not on vacation at a Florida beach. He was in prison in Florida because he violated the criminal laws of that state. I see no reason to reward him or penalize the State for his predicament.

{42} The Majority finds it persuasive that plea negotiations may continue throughout trial and up until the jury renders a verdict. *Arthur Lujan,* 112 N.M. at 349, 815 P.2d at 645. Bear in mind that this happens very seldom and did not happen here. I do not find this determinative in the case at bar.

**Nature of Plea Bargaining**

{43} The State is giving Defendant something that can be of great benefit to him—a plea bargain—something that he is clearly not entitled to. He has a constitutional right to a trial, but he has no constitutional right to a plea bargain. The time it takes to go through such plea negotiations should not be held against the State.

{44} The Majority states that "Defendant argues that he suffered oppressive pretrial incarceration because he lost the opportunity to serve part of his Florida sentence concurrently with his sentence in this case. We may consider Defendant's lost opportunity to serve concurrent sentences as an element of oppressive pretrial incarceration." I disagree. Prejudice or oppression should be founded upon facts, not possibilities or speculation. An opportunity is a chance that something may happen, but it may just as likely not happen.

{45} For these reasons, among others, the delays should not be held against the State. I would not reverse Defendant's conviction. I, therefore, respectfully dissent.