2008-NMSC-062

195 P.3d 1254

**STATE of New Mexico, Plaintiff–Petitioner,**

v.

**Todd MADDOX, Defendant–Respondent.**

No. 30,526.

Supreme Court of New Mexico.

Oct. 21, 2008.

Gary K. King, Attorney General, Katherine Zinn, Assistant Attorney General, Santa Fe, NM, for Petitioner.

Hugh W. Dangler, Chief Public Defender, Nancy M. Hewitt, Appellate Defender, Santa Fe, NM, for Respondent.

## OPINION

MAES, Justice.

{1} This case involves a twenty-eight-month delay in prosecution caused by Defendant's incarceration in another state and the parties' intermittent plea negotiations. A grand jury indicted Defendant on September 21, 2001, for unlawful taking of a vehicle, contrary to NMSA 1978, Section 66–3–504(A)(2) (1998) or, in the alternative, embezzlement, contrary to NMSA 1978, Section 30–16–8 (1995, prior to amendments through 2007). The State did not arrest Defendant until July 14, 2003, when Defendant was extradited to New Mexico after serving a prison sentence in Florida. Defendant filed a motion to dismiss the indictment on January 15, 2004, alleging that his speedy trial rights under the Sixth Amendment of the United States Constitution and Article II, Section 14 of the New Mexico Constitution had been violated. The district court denied the motion, and Defendant entered a conditional guilty plea, reserving the right to appeal the denial of his motion. The Court of Appeals reversed the district court, holding that the twenty-eight-month delay deprived Defendant of his Sixth Amendment right to a speedy trial. *State v. Maddox*, 2007–NMCA–102, ¶ 37, 142 N.M. 400, 166 P.3d 461. On petition of certiorari from the State, we reverse the Court of Appeals and affirm Defendant's conviction and sentence because the delay in this case was reasonable and did not cause Defendant undue prejudice.

## I. FACTS

{2} We have distilled the facts of this case to a time line of notable events. We will include other facts as necessary to our discussion.

### A. Time Line of Events

{3} September 21, 2001: Defendant was indicted for unlawful taking of a vehicle or, alternatively, embezzlement, and a bench warrant was issued.

December 13, 2002: The State lodged a detainer against Defendant with a Florida prison in connection to a probation violation unrelated to the indictment filed in this case.

March 10, 2003: Defense counsel entered an appearance and pro-forma demand for speedy trial.

April 18–24, 2003: Email conversation between defense counsel and the State, in which defense counsel suggested possible resolution of the charges.

June 16, 2003: The State received forms sent by Defendant asserting his rights to a speedy resolution of the charges under the Interstate Agreement on Detainers (IAD). Defendant had asked Florida prison officials to mail the IAD forms on April 3, 2003, and again on June 6, 2003.

July 14, 2003: Defendant completed his Florida sentence and was transported to New Mexico.

July 28, 2003: Defendant was arraigned.

August 23, 2003: The State sent a written plea offer to defense counsel.

November 17, 2003: Defense counsel responded to plea offer with a counteroffer that would allow Defendant to participate in the district court's Drug Court Program.

December 16, 2003: Pretrial conference in which defense counsel advised that Defendant wished to proceed to trial. The district court set the trial for January 20, 2004. Defense counsel sent an email to the State, continuing plea negotiations.

January 15, 2004: Defendant filed a motion to dismiss with prejudice, alleging his speedy trial right had been violated.

January 20, 2004: The district court continued trial setting and instead heard and denied motion to dismiss. Defendant entered a conditional guilty plea, reserving the right to appeal denial of motion.

### B. The Court of Appeals' Opinion

{4} The Court of Appeals initially remanded the case for entry of written findings of fact and conclusions of law relating to the speedy trial factors articulated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). After the district court entered its findings and conclusions, the Court of Appeals, in a divided Opinion, held that the length of delay in this case was presumptively prejudicial and weighed heavily against the State. *Maddox*, 2007–NMCA–102, ¶ 12, 142 N.M. 400, 166 P.3d 461. The Court held that the State failed to justify the delay and weighed the entire delay against the State. *Id.* ¶¶ 20–21, 29. The Court further held that Defendant asserted his right to a speedy trial "early and often" and that Defendant suffered slight prejudice consequent to the delay. *Id.* ¶ 37. Balancing these considerations, the Court of Appeals' majority held that the twenty-eight-month delay violated Defendant's right to a speedy trial. *Id.*

{5} The dissent argued that the nature of plea bargaining is to seek a resolution of mutual benefit both to the State and Defendant. *Id.* ¶ 43 ("[Defendant] has a constitutional right to a trial, but he has no constitutional right to a plea bargain."). The dissent argued that the time it takes to go through such plea negotiations should not weigh against the State. *Id.* The dissenting judge would have weighed the period of plea negotiations neutrally between the parties. On this and other grounds, the dissent argued against reversing Defendant's conviction.

### II. DISCUSSION

{6} Defendant has asserted his speedy trial right under the New Mexico Constitution, Article II, Section 14, as well as the Sixth Amendment of the United States Constitution. Defendant has not argued whether New Mexico's speedy trial guarantee should be interpreted differently than the Sixth Amendment, and we will not answer that question here. We apply the speedy trial analysis established in *Barker* and subsequent cases in the federal courts. *See State v. Coffin*, 1999–NMSC–038, ¶ 54 n. 2, 128 N.M. 192, 991 P.2d 477; *see also Klopfer v. North Carolina*, 386 U.S. 213, 222–23, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967) (declaring the Sixth Amendment right to a speedy trial to be

applicable to the states through the Fourteenth Amendment).

■ {7} In *Barker*, the United States Supreme Court created "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 529–30, 92 S.Ct. 2182. The Court identified four factors: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) the actual prejudice to the defendant that, on balance, determines whether a defendant's right to a speedy trial has been violated. *Id.* at 530, 92 S.Ct. 2182; *see Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (adopting the *Barker* balancing test).

■ {8} A district court weighing these factors must necessarily make certain factual determinations and legal conclusions. When reviewing a district court's denial of a motion to dismiss on speedy trial grounds, we give deference to the court's factual findings. *State v. Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061. Weighing and balancing the *Barker* factors is a legal determination that we review de novo. *Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061.

### A. Length of Delay

■ {9} "This factor serves two functions: (1) the length of delay must cross a threshold to establish a presumption of prejudice and (2) to trigger further inquiry into the other factors. *See id.* This Court has adopted bright-line guidelines to determine whether the length of delay is presumptively prejudicial, depending on the level of complexity involved in prosecuting a case. Under the premise that "the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge," *Barker*, 407 U.S. at 530–31, 92 S.Ct. 2182 our analysis first assigns a level of complexity to the case—simple, intermediate, or complex. *Salandre v. State*, 111 N.M. 422, 428 & n. 3, 806 P.2d 562, 568 & n. 3 (1991). "[A] minimum of nine months delay is necessary to trigger further inquiry

into the claim of a violation of the right to speedy trial in simple cases, twelve months in cases of intermediate complexity, and fifteen months in complex cases." *Coffin*, 1999–NMSC–038, ¶ 56, 128 N.M. 192, 991 P.2d 477.

■ {10} We calculate the length of delay from the date the Sixth Amendment right to a speedy trial attached "when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer." *Urban*, 2004–NMSC–007, ¶ 12, 135 N.M. 279, 87 P.3d 1061 (internal quotation marks and citation omitted). In the present case, the grand jury indicted Defendant on September 21, 2001, and Defendant entered his conditional guilty plea on January 20, 2004, approximately twenty-eight months later.

{11} The parties have not challenged our current guidelines for determining whether the delay in a case is presumptively prejudicial.[1] We assume without deciding that these guidelines continue to accurately represent the customary promptness with which cases are prosecuted. *See Doggett v. United States*, 505 U.S. 647, 651–52, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992).

■ {12} This assumption does not affect the result in this case. The twenty-eight-month delay is extraordinary and, therefore, presumptively prejudicial. Having made that determination, "the burden of persuasion shifts to the State to show that, considering the four factors as a whole, the defendant's constitutional rights have not been violated." *Urban*, 2004–NMSC–007, ¶ 11, 135 N.M. 279, 87 P.3d 1061.

### B. Reasons for Delay

■ {13} The reasons for a period of the delay may either heighten or temper the prejudice to the defendant caused by the length of the delay. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government."); *Urban*, 2004–NMSC–007,

---

1. This Court has granted certiorari in *State v. Alderete*, in which we may have the opportunity to revisit the guidelines for determining what

amount of delay is presumptively prejudicial. 2008–NMCERT–006, 144 N.M. 381, 188 P.3d 105.

¶ 20, 135 N.M. 279, 87 P.3d 1061 ("[T]he total delay, and complete lack of an acceptable reason for fourteen months of it, create[d] a strong presumption of prejudice, too high for the State to rebut on the facts of this case."). The delay in this case can be separated into two distinct time periods: (1) the period of approximately fifteen months from the date of indictment to the date on which the State located Defendant in Florida; and (2) the following thirteen-month period leading up to Defendant's guilty plea on January 20, 2004, during which the parties engaged in intermittent plea negotiations. We weigh the reasons for delay in each of these periods separately. *See Barker*, 407 U.S. at 531, 92 S.Ct. 2182.

### 1. Fifteen-month delay from indictment to locating Defendant

{14} The State argues that this period of fifteen months should not weigh against the State because the State was unaware of Defendant's whereabouts. Relying on *Urban*, the Court of Appeals held that "the State was required to do more than merely claim that it was unaware of Defendant's location; the State should have affirmatively explained why it could not reasonably have been expected to bring Defendant to trial during that time." *Maddox*, 2007–NMCA–102, ¶ 18, 142 N.M. 400, 166 P.3d 461. We agree with the Court of Appeals that the record is largely undeveloped with regard to this fifteen-month period.

{15} We have previously charged the State with constructive knowledge of the whereabouts of individuals in the State's custody. *Urban*, 2004–NMSC–007, ¶ 15, 135 N.M. 279, 87 P.3d 1061. We did so on the premise that "the State could have located [the defendant] simply by placing a phone call to the Department of Corrections' Central Records Office." *Id.* (alterations in original) (internal quotation marks and citation omitted). In *Urban* and *Zurla*, this Court held that the State may not claim mere negligence in failing to locate an accused when the technology to do so is available. *Urban*, 2004–NMSC–007, ¶ 15, 135 N.M. 279, 87 P.3d 1061; *Zurla*, 109 N.M. at 643, 789 P.2d at 591.

{16} However, Defendant's incarceration in another jurisdiction distinguishes this case from *Urban* and *Zurla*. In *Urban*, we required the State to offer a reasonable explanation "why it was not aware—or why it could not have become aware—that Defendant was in its custody." 2004–NMSC–007, ¶ 15, 135 N.M. 279, 87 P.3d 1061. We charged the State with constructive knowledge of the whereabouts of individuals in the State's custody because the State could call the Department of Corrections Central Records Office or search their website, which was open to the public, to search for the location of inmates. *Id.*

{17} In this case, Defendant's criminal actions in another jurisdiction caused his incarceration in the Florida prison and locating him was not as simple. While the State lodged a detainer against Defendant with the Florida prison on December 13, 2002, it did so for a probation violation unrelated to the indictment filed in this case. The only other information available as to when the State became aware of Defendant's location in Florida was from an email conversation between the State and defense counsel that occurred from April 18–24, 2003. In response to defense counsel's appearance filed on March 10, 2003, the State sent an email to defense counsel on April 18, 2003. The email stated: "You filed an entry on this guy. We don't have a record that the [bench warrant] was served. Do you know where this guy is? If so, he needs to have the [bench warrant] served and/or request an arraignment." Defense counsel responded: "He's in a Florida prison." The State then asked: "Do you know which prison, so I can tell the case worker [and] get the [bench warrant] served?" Under these circumstances, the State was permitted to wait for the arrest of the individual and the return of the warrant before taking further action. Therefore, we do not charge the State with constructive knowledge of Defendant's location and do not weigh this time period against the State.

### 2. Thirteen-month delay from locating Defendant to plea

#### a. Seven months from locating Defendant to his return to New Mexico

{18} To evaluate the reasons for the delay during this period, we first look to

the applicability of the IAD. The IAD is a compact between forty-eight states, the District of Columbia, Puerto Rico, the Virgin Islands, and the federal government that provides for delivery of a prisoner incarcerated in one state to another state for trial prior to the termination of the prisoner's sentence. NMSA 1978, § 31–5–12 (1971). For the purposes of this case, the IAD essentially "(1) gives a prisoner the right to demand a trial within 180 days; and (2) gives a[s]tate the right to obtain a prisoner for purposes of trial, in which case the [s]tate ... must try the prisoner within 120 days of his arrival." *Alabama v. Bozeman*, 533 U.S. 146, 151, 121 S.Ct. 2079, 150 L.Ed.2d 188 (2001). The IAD provides these mechanisms, but the state has no affirmative duty to seek custody of a prisoner simply because the state is aware of the prisoner's incarceration in another jurisdiction. *Palmer v. Williams*, 120 N.M. 63, 67, 897 P.2d 1111, 1115 (1995). Though an accused may assert the right to a speedy disposition under the IAD, the time limits do not apply if the state holding the accused discharges him prior to the running of those limits. *State v. Tarango*, 105 N.M. 592, 595, 734 P.2d 1275, 1278 (Ct.App.1987) ("Once the prisoner is released, his rights regarding a speedy trial are the same as those of any other individual."), *overruled on other grounds by Zurla*, 109 N.M. 640, 789 P.2d 588 Also, the IAD does not apply to probation revocation proceedings. *State v. McDonald*, 113 N.M. 305, 309, 825 P.2d 238, 242 (Ct.App.1991); *see Carchman v. Nash*, 473 U.S. 716, 725, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985) ("A probation-violation charge, which does not accuse an individual with having committed a criminal offense in the sense of initiating a prosecution, thus does not come within the terms of Art. III.").

{19} Though the IAD time limitations may not apply, the state retains its Sixth Amendment duty to bring the defendant to trial. *United States v. Dowl*, 394 F.Supp. 1250, 1255 (D.Minn.1975) ("While this provision places no duty upon the state, or in this case the United States, to bring the prisoner to trial absent a demand by him, ... the fact that the defendant is incarcerated in another jurisdiction does not relieve the government from providing a speedy trial under the Sixth Amendment." (citing *Smith v. Hooey*, 393 U.S. 374, 89 S.Ct. 575, 21 L.Ed.2d 607 (1969))); *see Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1970) ("Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial."). However, before the State can resolve charges against Defendant for purposes of his Sixth Amendment speedy trial right, the State first had to bring him to New Mexico. Therefore, the State's burden depends in part on the relationship between the IAD procedures and Defendant's Sixth Amendment right to a speedy trial.

{20} Under the IAD, when the state files a detainer, the state has 120 days from the date of the prisoner's arrival in the state to commence the trial. Section 31–5–12 art. 4(C). Conversely, when a defendant requests a speedy resolution under the IAD, "he shall be brought to trial within one hundred eighty days" from the date the State receives his written assertion. *Id.* art. 3(A). Therefore, a defendant's assertion under the IAD provides a shorter time period in which the state must try the defendant.

{21} On April 24, 2003, in the email conversation with the district attorney, defense counsel informed the State that Defendant "has requested a speedy disposition since a detainer was placed on him by your office on 12/13/02. [Defendant] sent it to Judge Murdoch and DDA Margot Ballon." But the State did not receive the documents from the Florida prison officials until June 16, 2003. Defendant was scheduled to finish his Florida prison sentence on July 14, 2003. The State had filed a detainer pursuant to the unrelated probation revocation proceeding, but did not have an obligation to seek Defendant's extradition under the IAD provisions. Outside of the IAD time limitations, Defendant's Sixth Amendment right gave the State some obligation to pursue his extradition.

{22} However, by defense counsel's representation that Defendant had asserted his IAD rights, it was reasonable for the State to believe that any action by the State to secure

Defendant's transportation would be meaningless. At the moment of Defendant's release from the Florida prison, the IAD would cease to apply, and the State would have no responsibility to seek Defendant's extradition. Thus, it was impractical to try and extradite Defendant before his Florida sentence was complete. Therefore, we do not penalize the State for the delay subsequent to this notification. *Cf. United States v. Corona–Verbera*, 509 F.3d 1105, 1114 (9th Cir. 2007) (holding that where the government has a good faith belief that seeking extradition from a foreign jurisdiction would be futile, due diligence does not require the government to do so); *United States v. Blanco*, 861 F.2d 773, 778 (2d Cir.1988) ("Due diligence does not require the government to pursue goals that are futile."). Under the unique circumstances of this case, Defendant's delay in filing his IAD request, therefore, weighs against his Sixth Amendment claim.

{23} Consequently, this delay is attributable in part to the State, to Defendant, and to the inherent delay involved in transferring Defendant to New Mexico. Therefore, we weigh the period of Defendant's incarceration, beginning December 13, 2002, after the State located Defendant in Florida, to his return to New Mexico on July 14, 2003, neutrally.

**b. Plea negotiations**

{24} This thirteen-month period was also marked by intermittent plea negotiations. Generally, there is no rule attributing delay resulting from attempted plea negotiations to a specific party and absent some act of bad faith or some prejudice to the defendant, "plea negotiations are themselves not a factor to be held against either party." *State v. Eskridge*, 1997–NMCA–106, ¶ 15, 124 N.M. 227, 947 P.2d 502; *State v. Lujan*, 112 N.M. 346, 350, 815 P.2d 642, 646 (Ct.App. 1991). Accordingly, the Court of Appeals noted, "[i]n *Eskridge*, it was the defendant's agreement, through his attorney, to delay the trial setting that weighed against him. In ... *Lujan*, it was the State's delay in responding to the defendant's plea offers that weighed against it." *Maddox*, 2007–NMCA–

102, ¶ 25, 142 N.M. 400, 166 P.3d 461 (citations omitted).

{25} Therefore, plea negotiations are not an excuse for a delay in the prosecution of a case. Likewise, unsuccessful plea negotiations do not constitute a valid reason for suspending the defendant's right to a speedy trial. *Lujan*, 112 N.M. at 350, 815 P.2d at 646 (weighing unsuccessful plea negotiations against the State where the prosecution prolonged the defendant's attempts to negotiate a plea bargain by delaying response to the defendant's proposals).

{26} In the present case, the State sent a written plea offer to defense counsel on August 23, 2003, and defense counsel did not respond until November 17, 2003. There seems to have been a suspension of activity in this case while the State waited for defense counsel's response. We agree with the Court of Appeals that the State is not excused in its burden to timely try a defendant while waiting for defense counsel to respond to a plea offer. *Maddox*, 2007–NMCA–102, ¶ 24, 142 N.M. 400, 166 P.3d 461. Because the State has the burden of bringing a case to trial, we will weigh unreasonable periods of delay against the State. *Barker*, 407 U.S. at 527, 92 S.Ct. 2182. The State must affirmatively seek to move the case to trial, even while plea negotiations are pending. Therefore, while the State timely made a plea offer, three months is too long a delay to reasonably attribute solely to awaiting a response to that offer. The State must follow up on plea offers and continue to move the case toward trial, even when a plea offer is outstanding. However, Defendant is also required to timely respond to plea offers, and we do not condone Defendant's three-month delay to respond during this period. Therefore, we weigh this three-month period only slightly against the State.

**c. Six months from date Defendant returned to New Mexico to entry of plea**

{27} On July 24, 2003, Defendant returned to New Mexico. He was arraigned on July 28, 2003. At the pretrial conference on December 16, 2003, defense counsel indicated that Defendant wished to proceed to trial. The district court set the trial date for

January 20, 2004. During this period, the case moved toward trial with customary promptness. We weigh this six-month period of time neutrally between the parties.

## C. Assertion of Defendant's Right

{28} We next examine the "timing and manner in which Defendant asserted his right." *State v. Laney*, 2003–NMCA–144, ¶ 23, 134 N.M. 648, 81 P.3d 591; *see Coffin*, 1999–NMSC–038, ¶ 67, 128 N.M. 192, 991 P.2d 477. Though assertion of the right is not determinative, we give the adequacy and timeliness of a defendant's assertion strong evidentiary weight. *Zurla*, 109 N.M. at 644, 789 P.2d at 592. In some cases, deprivation of the right may work to the defendant's advantage. *Barker*, 407 U.S. at 521, 92 S.Ct. 2182. We look to the sufficiency of a defendant's assertion as indicative of the extent to which the defendant has suffered the burdens that the speedy trial right was intended to minimize. *Zurla*, 109 N.M. at 644, 789 P.2d at 592.

{29} On March 10, 2003, defense counsel entered an appearance in this matter and filed a pro forma demand for speedy trial. We have previously held that "[s]uch pro forma motions are generally afforded relatively little weight in this analysis." *Urban*, 2004–NMSC–007, ¶ 16, 135 N.M. 279, 87 P.3d 1061.

{30} Defendant made an additional demand for speedy resolution under the IAD. A demand for speedy resolution under the IAD is a sufficient assertion of Defendant's Sixth Amendment right. *See State v. Lujan*, 2003–NMCA–087, ¶ 24, 134 N.M. 24, 71 P.3d 1286. However, we weigh the force of this assertion by its timeliness. *Id.* Defendant filled out the IAD forms on April 3, 2003, and turned them over to prison officials. Though defense counsel informally notified the State of Defendant's attempt to send the IAD forms in an email conversation, proper assertion of the rights under the IAD require strict compliance with its provisions. *United States v. Henson*, 945 F.2d 430, 434 (1st Cir.1991) ("If a premature communication, or one which is misdirected or fails to provide the information required by Article III, were considered sufficient to trigger the 180–day provision under the IAD, it could create a trap for unwary prosecuting officials, and undermine the primary purpose of Article III." (internal quotation marks and citation omitted)). Similarly, this email conversation was not an assertion of Defendant's Sixth Amendment speedy trial right because it simply notified the State of Defendant's pending formal assertion under the IAD. Therefore, Defendant asserted his right to a speedy trial using the IAD procedures on June 16, 2003, the date on which his formal IAD request was received. This assertion weighs minimally in Defendant's favor on his Sixth Amendment claim.

{31} Finally, Defendant also attempted to assert his right to a speedy trial by filing a motion to dismiss on January 15, 2004. Defendant asserts prejudice from the delay in this case, yet waited until five days before trial before filing this motion to dismiss. This assertion was not timely. *See Laney*, 2003–NMCA–144, ¶ 24, 134 N.M. 648, 81 P.3d 591 ("Because Defendant waited until the eleventh hour to specifically and meaningfully invoke a ruling on the speedy trial issue, we find this factor weighs only slightly in his favor."). We weigh this factor slightly in Defendant's favor, but note that Defendant's assertions were neither timely nor forceful.

## D. Prejudice to Defendant

{32} With respect to a showing of prejudice, we have held that "[a]lthough the State bears the ultimate burden of persuasion, Defendant does bear the burden of production on this issue, and his failure to do so greatly reduces the State's burden." *Urban*, 2004–NMSC–007, ¶ 18, 135 N.M. 279, 87 P.3d 1061 (citing *Zurla*, 109 N.M. at 646, 789 P.2d at 594). The United States Supreme Court has identified three interests under which we analyze prejudice to the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker*, 407 U.S. at 532, 92 S.Ct. 2182. Defendant was not subject to pretrial incarceration because he was already incarcerated in Florida on different charges. *See Urban*, 2004–NMSC–007, ¶ 17, 135 N.M. 279, 87 P.3d 1061.

{33} The Court of Appeals correctly noted that "[s]ome degree of oppression and anxiety is inherent for ever[y] defendant who is jailed while awaiting trial." *Maddox*, 2007–NMCA–102, ¶ 35, 142 N.M. 400, 166 P.3d 461 (internal quotation marks and citation omitted). Defendant did not seek speedy resolution in this case until April 2003, when he first attempted to send the IAD forms. Moreover, Defendant's prior incarceration buffered any undue anxiety that he may claim. There is no evidence of undue anxiety that causes us to weigh this factor against the State.

{34} The State does little to rebut the presumption of prejudice that the delay impaired Defendant's case. *See Zurla*, 109 N.M. at 646, 789 P.2d at 594 ("Once the defendant has demonstrated presumptively prejudicial delay and thus triggered the *Barker* . . . analysis, the presumption of prejudice does not disappear."). However, Defendant's claim that the delay impaired his defense because it presumptively compromised the reliability of a trial is too speculative to weigh against the State. *Cf. Urban*, 2004–NMSC–007, ¶ 18, 135 N.M. 279, 87 P.3d 1061. As the Court of Appeals noted, Defendant "fails to set forth any specific allegations of prejudice and has thus not met his burden of production on this point." *Maddox*, 2007–NMCA–102, ¶ 36, 142 N.M. 400, 166 P.3d 461.

■ {35} We disagree with the Court of Appeals that Defendant suffered prejudice because "had the State timely brought him to trial, he would have had an opportunity to serve his sentences concurrently." *Id.* ¶ 34. The Court of Appeals correctly noted that "the focus of our inquiry in a speedy trial analysis is on undue prejudice." *Id.* ¶ 35 (internal quotation marks and citation omitted). In *Urban*, we held that the loss of the opportunity to serve sentences concurrently "is cognizable prejudice under our case law." 2004–NMSC–007, ¶ 19, 135 N.M. 279, 87 P.3d 1061. However, we do not find any undue prejudice because it is speculative as to how the district court may choose to exercise its discretion in sentencing. Furthermore, this case is distinguished from *Zurla* because here Defendant was facing sentences from multiple jurisdictions, which further attenuates the possibility of prejudice to Defendant. Overall, we conclude that Defendant did not suffer any undue prejudice as a result of the delay.

### E. Balancing Test

■ {36} We balance the *Barker* factors in the context of the policy that supports the enforcement of the speedy trial right. The four *Barker* factors have no talismanic qualities. "[N]o one factor constitutes either a necessary or sufficient condition to finding a deprivation of the right to a speedy trial." *Zurla*, 109 N.M. at 642, 789 P.2d at 590; *accord Barker*, 407 U.S. at 533, 92 S.Ct. 2182. Where the State can show that "[t]here were good reasons for the delay; the defendant did not timely assert his right and acquiesced in the delay; or the defendant was not actually prejudiced by the delay," the State discharges its burden to show that on balance the defendant's speedy trial right has not been violated. *Work v. State*, 111 N.M. 145, 147, 803 P.2d 234, 236 (1990).

{37} The total delay of twenty-eight months is presumptively extraordinary, but the unique facts of this case significantly temper the prejudice to Defendant. Much of the delay is directly attributable to Defendant's flight from New Mexico and incarceration in another jurisdiction. On balance, the length of delay and reasons for the delay weigh neutrally between the parties. Given this neutral account of the delay, the absence of undue prejudice, and Defendant's weak assertion of his right, we conclude that Defendant has not been deprived of his Sixth Amendment right to a speedy trial.

### III. CONCLUSION

{38} We reverse the Court of Appeals and affirm Defendant's conviction and sentence.

{39} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PATRICIO M. SERNA, RICHARD C. BOSSON, and CHARLES W. DANIELS, Justices.