This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                  **NO. 28,865 (consolidated with NO. 28,864)**

**DANIEL HERRERA,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**John M. Pasternoster, District Judge**

Gary K. King, Attorney General
Anita Carlson, Assistant Attorney General
Santa Fe, NM

for Appellee

Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**WECHSLER, Judge.**

Defendant appeals from a judgment and sentence entered after Defendant entered into two underlying conditional plea agreements, reserving the right to challenge his motions to dismiss the charges based on alleged speedy trial violations. We conclude that the amount of delay in these consolidated cases was insufficient to overcome the lack of a showing of particularized prejudice. Accordingly, we affirm the district court's ruling that Defendant's right to a speedy trial was not violated in either proceeding.

**BACKGROUND**

On March 29, 2007, in two separate grand jury indictments, Defendant was charged with eight felonies. In CR 2007-045, Defendant was charged with aggravated battery on a household member, aggravated assault with a deadly weapon against a household member, bribery or intimidation of a witness, two counts of child abuse, and false imprisonment. In the other indictment, CR 2007-046, Defendant was charged with kidnaping and aggravated battery on a household member. With the exception of the child abuse charge, all of the charges involved the same victim. Accordingly, the indictments proceeded along the same path for purposes of setting a trial.

Defense counsel filed an entry of appearance on April 6, 2007, including a pro forma demand for speedy trial. As addressed below, the proceedings were thereafter

delayed by a series of continuances and vacated trial settings. On July 8, 2008, Defendant filed a motion to dismiss on speedy trial grounds in CR 2007-046. Defendant filed a similar motion in CR 2007-045 on July 18, 2008. Both motions were addressed in a single hearing with the district court ruling against Defendant. The proceedings for both cases were then addressed in the same conditional plea agreement with Defendant reserving the right to appeal the speedy trial rulings, and a single judgment and sentence was issued. Defendant filed separate appeals, which this Court consolidated.

**SPEEDY TRIAL ANALYSIS**

In addressing the speedy trial issue, we review the facts and circumstances particular to this case to determine whether "actual and articulable deprivation" of Defendant's right to a speedy trial existed. *State v. Garza*, 2009-NMSC-038, ¶¶ 11-12, 146 N.M. 499, 212 P.3d 387. We conduct our analysis by balancing four factors: (1) the length of the delay in bringing the defendant to trial, (2) the reasons for that delay, (3) the defendant's assertion of his right to speedy trial, and (4) the actual prejudice suffered by the defendant as a result of the delay. *Id.* ¶ 13 (relying on *Barker v. Wingo*, 407 U.S. 514 (1972)) . We adopt this balancing test to the varying circumstances presented in each case involving a claim of speedy trial violation. *See Garza*, 2009-NMSC-038, ¶ 14. However, as noted by our Supreme Court in *Garza*,

our focus remains on the underlying purposes of the balancing test in analyzing the right to a speedy trial. *Id.* While we give deference to findings made by the district court that are supported by substantial evidence, we must conduct an independent examination of the record before concluding that a speedy trial violation has or has not occurred. *See State v. Plouse*, 2003-NMCA-048, ¶ 34, 133 N.M. 495, 64 P.3d 522; *see also State v. Manzanares*, 1996-NMSC-028, ¶¶ 1, 10, 121 N.M. 798, 918 P.2d 714 (explaining that, in speedy trial cases, when the findings of the district court are supported by substantial evidence, we weigh the findings de novo).

**Length of the Delay**

We first determine whether the entire length of the delay is "presumptively prejudicial." Our Supreme Court has recently adopted new guidelines for determining when delay is "presumptively prejudicial." *Garza*, 2009-NMSC-038, ¶¶ 48-50. The new guidelines are applicable in cases, such as these, where a motion to dismiss based on speedy trial is "initiated on or after August 13, 2007." *Id.* ¶ 50. Under the new guidelines, a delay of one year in a simple case, fifteen months in an intermediate case, and eighteen months in a complicated case is considered "presumptively prejudicial." *Id.* ¶ 48. We note that a "presumptively prejudicial" delay is merely a triggering mechanism for applying the balancing test and does not lead to a

presumption that Defendant's right to speedy trial has been violated. *Id.* ¶ 21 (internal quotation marks omitted).

Defendant's right to a speedy trial attached on March 29, 2007, when Defendant was indicted. *State v. Maddox*, 2008-NMSC-062, ¶ 10, 145 N.M. 242, 195 P.3d 1254 (stating that "[w]e calculate the length of delay from the date the Sixth Amendment right to a speedy trial attached when the defendant becomes an accused, that is, by a filing of a formal indictment or information or arrest and holding to answer" (internal quotation marks and citation omitted)). Defendant pled guilty on August 4, 2008, with a resultant delay between his indictment and plea of a few days more than sixteen months.

We address first the district court's determination of the relative difficulty of the two cases set against the length of the sixteen-month delay. *See State v. Coffin*, 1999-NMSC-038, ¶ 57, 128 N.M. 192, 991 P.2d 477 (holding that the trial court is in the best position to assess the complexity of a case). The district court only issued a written order in CR-2007-46, where it stated that "this case verges on the high end of a simple case to the low end of an intermediate case due to the fact that this case is inextricably tied to [CR-2007-45] and involved [the] need to release CYFD records regulated by statute and regulations." As indicated, the district court did not enter written findings with respect to CR-2007-45, but concluded at the motion hearing that

"[t]his is a case of intermediate complexity and not on the low end." In reaching its conclusion, the district court noted that the case involved six felony counts, one of which was witness intimidation of the alleged victim, and the "unusual aspect of disclosure of the CYFD records."

Defendant argues that both cases are of simple complexity because all of the evidence other than CYFD records was testimonial. "The question of the complexity of a case, however, is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge of law enforcement and prosecutorial responsibilities." *State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). As Defendant points out, CR-2007-046 involved CYFD records that added to the complexity of the case. CR-2007-045 involved the same records and six felony counts. Both cases had several potential witnesses. We will defer to the district court's conclusions and use the 15-month period for intermediate cases as a benchmark for our analysis. Because the delay extended more than a month beyond that considered presumptively prejudicial for these two cases, Defendant met his initial burden of showing that the threshold length of delay was exceeded. *Garza*, 2009-NMSC-038, ¶ 21. Accordingly, we proceed to a full analysis of the *Barker* factors. *Id.*

As we have stated, the delay was a little over a month. We believe that this factor weighs against the State, but only slightly. *Cf. Zurla v. State*, 109 N.M. 640, 642, 789 P.2d 588, 590 (1990) (weighing a seventeen-month delay in a simple shoplifting case somewhat heavily against the state), *modified on other grounds by Garza*, 2009- NMSC-038; *State v. Talamante*, 2003-NMCA-135, ¶¶ 1, 21, 134 N.M. 539, 80 P.3d 476 (holding that a delay of thirty-one months in an intermediate or complex case weighed heavily in favor of the defendant); *State v. Marquez*, 2001-NMCA-062, ¶ 12, 130 N.M. 651, 29 P.3d 1052 (weighing heavily against the state a delay of nine months beyond the presumptively prejudicial period for a simple case).

**Reasons for the Delay**

The first trial setting, October 1, 2007, nearly six months after the indictments, was vacated on Defendant's motion, so that he could compel disclosure of background (NCIC) checks on three witnesses and certain records of the Children, Youth, and Families Department (CYFD). Defendant argues that he should not be held responsible for this delay because the State bears the burden to timely bring him to trial, and he is entitled to present a defense. Although the State bears the ultimate burden to timely bring Defendant to trial, we do not weigh this initial delay against it,

particularly in light of Defendant's delay in requesting this discovery until so close to the first trial date.

The remaining delay can be broken down into three time periods. The first delay consisted of the period between the original trial setting, October 1, 2007, and the next available trial setting, February 4, 2008. The district court determined that this delay was caused "by the need for the Court to do an *in camera* review of CYFD documents in [one of these two cases. D]efendant sought out these records in a request for additional discovery and chose to delay the initial trial as a tactical decision." In addition, Defendant did not request the documents until one month prior to the trial setting. We defer to the district court's factual interpretation of this delay, *Plouse*, 2003-NMCA-048, ¶ 34, and we therefore agree with its conclusion that this period of delay does not weigh against the State.

The October trial was vacated, and trial was reset for February 4, 2008. That trial setting had to be vacated because of a snowstorm. We do not weigh this period against the State. The district court addressed the snowstorm and the remaining delay as follows:

> The Court finds that the remaining delays regarding this case was primarily caused by crowded dockets, court administration, judge scheduling and an act of nature. [D]efendant was aware of the docket issues when [he] chose to disqualify the assigned judge and seek the judge in the other division of the District. These delays do not weigh against the State or . . . Defendant. The State requested re-settings and

8

extension of time immediately as required upon the occasion of each delay. The court does not find any bad faith on the part of the State in this regard.

The trial delay was caused by the district court's crowded docket and resulted in postponement of the trial setting. We defer to the district court's determination that the State did not intentionally seek the delay or otherwise act in bad faith. *See Garza*, 2009-NMSC-038, ¶ 28; *cf. Maddox*, 2008-NMSC-062, ¶ 27 (weighing as neutral period of time during which case moved toward trial "with customary promptness"). We do, however, weigh this period of delay against the State because, by the court's own admission, the crowded docket was the primary reason for the delay. *Garza*, 2009-NMSC-038, ¶ 29 ("For purposes of analyzing a speedy trial claim, this type of delay [crowded dockets] is considered negligent delay and is weighed against the State accordingly.").

In summary, we weigh the reason for the delay factor against the State, but only slightly.

**Assertion of Defendant's Right**

The assertion of the right to a speedy trial, we look at the timing of the assertion and the manner in which the right was asserted. *Id.* ¶ 32 (stating that an appellate court gives weight on assertion of the right factor based on frequency and force of a defendant's objections to delay). Here, the district court observed that Defendant had

properly asserted his right, presumably a reference to Defendant's filing of a pro forma demand for speedy trial when counsel first entered an appearance on April 6, 2007. However, pro forma pretrial motions are usually given relatively little weight in a speedy trial analysis. *See State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. In both cases, Defendant did not file a motion to dismiss until late in the proceedings, on July 8 and July 18, 2008. In addition, the district court noted that Defendant did not appear to even be ready for trial, since he was still filing late motions.

We agree with the district court's finding that Defendant asserted his right to a speedy trial. However, based on the timing of the assertions filed in this case, we conclude that this factor weighs only slightly in Defendant's favor. *See Maddox*, 2008-NMSC-062, ¶ 28 (reviewing assertion of right to speedy trial based on adequacy and timeliness of the assertion); *see also Marquez*, 2001-NMCA-062, ¶ 22 (holding that motion to dismiss on speedy trial grounds six days prior to trial justified weighing assertion of right factor slightly in favor of the defendant).

**Prejudice**

We consider three interests when analyzing the prejudice factor of the balancing test. Those interests include (1) preventing oppressive pretrial incarceration, (2) minimizing anxiety and concern to the defendant, and (3) limiting the possibility that

10

the defense will be impaired. *Garza*, 2009-NMSC-038, ¶ 35. Defendant had the burden to prove that he suffered from a level of anxiety and concern that resulted in the violation of his speedy trial right, and a mere possibility of prejudice would not serve to meet that burden. *Id.* It was Defendant's burden to prove actual prejudice, after which the burden would shift to the State to persuade the district court "on the ultimate question of whether [D]efendant's right to a speedy trial has been violated." *Id.* ¶ 22.

Our Supreme Court in *Garza* held that, unless the length of and reasons for delay weigh heavily in favor of the defendant, the defendant is required to show "particularized prejudice of the kind against which the speedy trial right is intended to protect." *Id.* ¶ 39. A particularized showing of prejudice is not one based on speculation or on the possibility of prejudice. *Id.* ¶ 35; *cf. Maddox*, 2008-NMSC-062, ¶ 35. In addition, Defendant must show a nexus between the claimed prejudice and undue delay. *See Salandre v. State*, 111 N.M. 422, 431, 806 P.2d 562, 571 (1991), *modified on other grounds by Garza*, 2009-NMSC-038.

Defendant is essentially relying on three assertions of prejudice: the "potential" witness recollection problems, anxiety and concern, and the restrictions placed on him by being subject to electronic monitoring. With regard to the "potential" witness recollection problems, Defendant fails to make a particularized assertion as to how his

11

defense would be impaired. *See Garza*, 2009-NMSC-038, ¶ 37 (holding that non-particularized assertions of prejudice are not the kind of prejudice that the fourth *Barker* factor is designed to address).

Because some level of concern accompanies charges pending in a criminal case, we look for a showing of undue concern or a showing that the concern has continued for a period of time that is unacceptably long. *See Coffin*, 1999-NMSC–038, ¶ 69; *see also Garza*, 2009-NMSC-038, ¶ 37 (holding that a non-particularized showing of prejudice is not the kind of prejudice contemplated in a speedy trial analysis). We are not convinced that Defendant's level of concern went beyond that of any other person facing charges in a criminal matter. *See State v. Hayes*, 2009-NMCA-008, ¶ 14, 145 N.M. 446, 200 P.3d 99 (determining that the defendant did not show prejudice based on claims of anxiety because some amount of anxiety is inherent for persons jailed while awaiting trial and the defendant was not in custody for the charges).

With respect to the ankle bracelet, Defendant concedes that he had been on electronic monitoring since November 2006 in an unrelated case. As such, there was no showing of actual prejudice. In sum, we conclude that Defendant did not make a showing of actual or particularized prejudice. *See Garza*, 2009-NMSC-038, ¶ 37. We do not weigh this factor in favor of Defendant.

**Balancing the Factors**

12

The total delay in this case was sixteen months, just one month over the applicable trigger date for a case of intermediate complexity. The period of delay weighs slightly against the State. Defendant caused the initial delay. The cases were then delayed due to the snowstorm on the February trial date. The district court determined that the remaining delay was caused by the court's crowded docket. There was no indication that the State acted in bad faith, or even that any of the delay was attributable to its negligence. The assertion of the right factor weighs slightly in favor of Defendant. Finally, Defendant failed to meet his burden to show "particularized prejudice of the kind against which the speedy trial right is intended to protect" as required by *Garza*. 2009-NMSC-038, ¶ 39. On balance, we conclude that there was no violation of Defendant's speedy trial right in this case.

**CONCLUSION**

We affirm the denial of Defendant's motions to dismiss the charges based on speedy trial grounds.

**IT IS SO ORDERED.**

_____
**JAMES J. WECHSLER, Judge**

**WE CONCUR:**

13

_____

**CELIA FOY CASTILLO, Chief Judge**

_____

**LINDA M. VANZI, Judge**