This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                                    **No. A-1-CA-34681**

**ROXANNE HOUSTON,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CURRY COUNTY**
**Stephen K. Quinn, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellant

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**ZAMORA, Judge.**

{1}     Defendant Roxanne Houston was charged with two counts of aggravated battery with a deadly weapon, contrary to NMSA 1978, Section 30-3-5(A), (C) (1969), and one count of child abuse, contrary to NMSA 1978, Section 30-6-1(D) (2009), stemming from a 2013 incident with her neighbors. Nineteen months after Defendant's arrest, the district court dismissed her charges finding that her Sixth Amendment right to a speedy trial had been violated. The State appeals the district court's dismissal. We reverse the district court's dismissal of Defendant's charges and hold that Defendant's constitutional right to a speedy trial was not violated.

**BACKGROUND**

{2}     Defendant's charges arose out of a July 3, 2013 incident between Defendant and two adult women and three minor children (Victims) who were attending a party at the home of Defendant's neighbor. Victims reported to police that following a verbal argument, Defendant allegedly drove her car twice at them and struck the two adult women. Defendant was arrested on August 5, 2013.

{3}     A preliminary hearing was initially set for September 12, 2013, but was rescheduled on Defendant's motion for a continuance. The preliminary hearing was then rescheduled for October 3, 2013, but was again vacated upon Defendant's request for a continuance. On October 23, 2013, Defendant ultimately waived her right to a preliminary hearing. The State filed a criminal information on October 30, 2013,

2

amending Defendant's charges to five counts of aggravated battery with a deadly weapon, contrary to Section 30-3-5 (A), (C). On November 21, 2013, Defendant waived her arraignment and entered a plea of not guilty.

{4}	Because this is a memorandum opinion and the parties are familiar with the factual and procedural background of this case, we reserve further discussion of the relevant facts and procedure for our analysis.

**DISCUSSION**

{5}	The Sixth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, guarantees a criminal defendant the right to a speedy trial. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial[.]"). While we recognize the "societal interest in bringing an accused to trial," we are tasked with looking closely at each claimed speedy trial violation. *See State v. Garza*, 2009-NMSC-038, ¶¶ 12-13, 146 N.M. 499, 212 P.3d 387. "The heart of the right to a speedy trial is preventing prejudice to the accused." *Id.* ¶ 12. Thus, there must be more than simply a delay in bringing the case to trial. *See State v. Ochoa*, 2017-NMSC-031, ¶ 4, 406 P.3d 505.

{6}	In making our determination, "we use the four-factor test set forth in *Barker*, balancing the length of delay, the reason for delay, the defendant's assertion of the

right to a speedy trial, and the prejudice to the defendant." *Ochoa*, 2017-NMSC-031, ¶ 4; *see Barker v. Wingo*, 407 U.S. 514 (1972).

**{7}** The speedy trial analysis is fluid and "specifically rejects inflexible, bright-line approaches[.]" *See Garza*, 2009-NMSC-038, ¶ 13. Instead, the *Barker* analysis is a balancing test in which we weigh the actions and conduct of both the prosecution and the defendant. *See Barker*, 407 U.S. at 530.

**{8}** In analyzing the *Barker* factors, "we defer to the district court's factual findings that are supported by substantial evidence, but we independently review the record to determine whether a defendant was denied [her] speedy trial right and we weigh and balance the *Barker* factors de novo." *State v. Flores*, 2015-NMCA-081, ¶ 4, 355 P.3d 81; *see Ochoa*, 2017-NMSC-031, ¶ 4 ("We defer to the district court's factual findings in considering a speedy trial claim, but weigh each factor de novo.").

**1.     Length of Delay**

**{9}** The length of delay is the first factor to be considered in the speedy trial analysis. *See Barker*, 407 U.S. at 530. It functions as a "triggering mechanism" such that a court's determination that the length of delay is presumptively prejudicial prompts further inquiry into the remaining *Barker* factors. *See Garza*, 2009-NMSC-038, ¶¶ 21-23. "We calculate the length of delay from the time the defendant becomes an accused, that is, by a filing of a formal indictment or

4

information or arrest and holding to answer." *Flores*, 2015-NMCA-081, ¶ 5 (internal quotation marks and citation omitted).

{10} In *Garza*, our Supreme Court articulated the following benchmarks for determining when the length of delay becomes presumptively prejudicial: twelve months for simple cases, fifteen months for intermediate cases, and eighteen months for complex cases. 2009-NMSC-038, ¶ 48. These benchmarks are not bright-line tests, *see id.* ¶ 49, but instead function to trigger the district court to analyze other factors in the speedy trial analysis. *Ochoa*, 2017-NMSC-031, ¶ 13. The longer the delay is, the more heavily this factor will weigh in Defendant's favor. *See id.* ¶ 14 (explaining "a delay barely crossing the guideline 'is of little help' to the defendant's claim, while a delay of extraordinary length weighs heavily in favor of the defendant").

{11} The district court determined this to be a simple case. The State argues that this case is of intermediate complexity because there were going to be twelve witnesses called at trial and three days were needed for trial. Nonetheless, the parties agree that whether this is determined to be a simple or intermediate case, the speedy trial analysis has been triggered. "We defer to the district court's finding of complexity," *id.* ¶ 15, as "[t]he question of the complexity of a case . . . is best answered by a trial court familiar with the factual circumstances, the contested issues and available evidence, the local judicial machinery, and reasonable expectations for the discharge

of law enforcement and prosecutorial responsibilities." *State v. Rojo*, 1999-NMSC-001, ¶ 52, 126 N.M. 438, 971 P.2d 829 (internal quotation marks and citation omitted). Because this was determined to be a simple case, it should have been brought to trial within twelve months. *See Garza*, 2009-NMSC-038, ¶ 48.

{12} The relevant time frame for this case begins with Defendant's arrest on August 5, 2013, and ends with the district court's firm trial setting of March 25, 2015, or approximately nineteen months. The delay of seven months is considered presumptively prejudicial and sufficient to trigger further inquiry into the *Barker* factors.

{13} We recognize that this first factor has a dual purpose. *See Ochoa*, 2017-NMSC-031, ¶ 12 (describing the length of delay as both the threshold question in the speedy trial analysis and one factor to be weighed with the other three *Barker* factors). Not only is it the triggering mechanism for further inquiry into the *Barker* factors, it is also an independent factor to consider in determining whether a speedy trial violation has occurred. *See Ochoa*, 2017-NMSC-031, ¶ 23; *see Garza*, 2009-NMSC-038, ¶ 23 (directing courts to consider the length of delay as one of the four factors in the *Barker* analysis). In weighing the length of the delay, "we [must] consider the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Spearman*, 2012-NMSC-023, ¶ 23, 283 P.3d 272 (internal

quotation marks and citation omitted). The greater the delay the more heavily it will potentially weigh against the state. *See Garza*, 2009-NMSC-038, ¶ 24; *see also State v. Serros*, 2016-NMSC-008, ¶ 26, 366 P.3d 1121 ("A delay that crosses the threshold for presumptive prejudice necessarily weighs in favor of the accused; the only question is, how heavily?" (internal quotation marks and citation omitted)). The district court did not indicate how it weighed this delay. We conclude that the seven-month delay beyond the twelve-month threshold weighs only slightly against the State and slightly in favor of Defendant. *See State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820 (holding that a delay of six months beyond the fifteen-month guideline for a case of intermediate complexity "was not so long or protracted as to weigh more than slightly against the State").

**2.    Reasons for the Delay**

{14}    The second factor we must consider is the reason for the delay. *See Barker*, 407 U.S. at 531. *Barker* identified three types of delay and the various weights that should be assigned to each. The Court explained:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

7

*Id.* "In addition, delay initiated by defense counsel generally weighs against the defendant." *Ochoa*, 2017-NMSC-031, ¶ 18.

**{15}** On March 13, 2015, Defendant filed a motion to dismiss for violation of her right to a speedy trial and due process. On March 25, 2015, the district court held a hearing on Defendant's motion. In arguing the balancing of the *Barker* factors, Defendant asserted that the length of delay was substantial, the reasons for the delay rested almost entirely with the State, she properly asserted her right to a speedy trial, and she was prejudiced as a result of the delay. As explained in further detail below, the district court heard testimony from Defendant in which she described how the trial delay worsened her existing anxiety. The district court agreed with Defendant and entered an order dismissing her charges based on a violation of her Sixth Amendment right to a speedy trial.

**{16}** In its oral ruling dismissing Defendant's charges on speedy trial grounds, the district court identified three time periods as the basis for the delay. First, it held the State responsible for the continuance of the first trial setting on June 4, 2014. Defendant requested the trial continuance based on late disclosures by the State and its filing of an amended criminal information right before trial. Next, it held Defendant responsible for the continuances she requested between September 2013 and October 2013. Finally, it identified four to five weeks between July and August 2014 that the

district court was unavailable due to knee surgery and recovery from a car accident, and broadly stated that despite its unavailability, this matter "could have been set, to me, before now." The district court did not make a finding as to the weight assigned to the delay due to its own unavailability.

{17} We agree with the district court that the continuances Defendant requested at the outset of this case, between September 2013 and October 2013 are properly charged against Defendant. From October 30, 2013, when the criminal information was filed through the June 4, 2014 trial setting, the case "moved toward trial with customary promptness." *State v. Maddox*, 2008-NMSC-062, ¶ 27, 145 N.M. 242, 195 P.3d 1254, *abrogated on other grounds by Garza*, 2009-NMSC-038, ¶¶ 47-48.

{18} At the June 2, 2014 jury selection setting, Defendant asked for a continuance because the State filed a third amended witness list and an amended criminal information a couple weeks before trial, as well as notice of intent to introduce other crimes. Defendant argued that this new witness list added eleven new witnesses, and there was no way to interview all of these witnesses before trial. This was all unduly burdensome on Defendant. The State opposed the continuance. The State argued that all of the witnesses on the latest witness list were on Defendant's witness list, therefore there is no prejudice to the defense. The prosecutor further argued that because there was no prejudice, a continuance was not the proper remedy. The State

conceded that one of the witnesses had been disclosed in February, but that they did not have a good address for her. On April 9, 2014, defense counsel's office contacted the State to let them know that they received returned mail from this witness and requested a new address. On May 22, the prosecutor obtained the witness's new address, contacted defense counsel's office with the information and filed an "amended address to witness list" with the court on the same day. The State also asked that rather than continuing the trial, the State would not call this witness. The State continued to argue that this case should go to trial. The prosecutor expressed concern for Victims in this case and the prejudice in not trying the case immediately. Our comparison of Defendant's witness list and all four of the State's witness lists revealed that only two witnesses, both from the Clovis Police Department, had not been previously identified by either party. Last, the State analogized the notice of intent to introduce other crimes to a motion in limine and argued that it was timely filed.

{19}     The amended criminal information consolidated three counts relating to the three children involved in the July 3, 2013 incident, originally charged as aggravated battery (deadly weapon), into one count of child abuse by endangerment. On appeal, Defendant argues that this is more than a mere consolidation, but rather that the evidence of aggravated battery is substantially different than evidence of child endangerment. She further argues that she had a successful defense against the aggravated battery charge since none of the children were battered. However, even

10

though a child did not suffer a physical injury, child endangerment would require a showing that Defendant's conduct exposed the children to a significant risk of harm. Section 30-6-1(D). Defendant characterizes this change in charges as not inconsequential. We agree with the State that the evidence is relevant to both charges. We also agree with Defendant that the consolidation is not inconsequential because it does not afford her the same straightforward defense. The district court granted Defendant's motion and vacated the June 4, 2014 jury trial setting.

{20} We conclude that the parties share responsibility for the continuance of the June 4, 2014 trial setting. Accordingly, because both parties share fault as it relates to this delay, this period of time does not weigh in favor of or against either party.

{21} We further hold that the time during which the district judge was medically unavailable was neutral delay that does not weigh against either the State or Defendant. *See State v. White*, 1994-NMCA-084, ¶ 5, 118 N.M. 225, 880 P.2d 322 (holding that the district judge's surgery and recovery time did not weigh against either side in speedy trial analysis). From August 12, 2014, through October 24, 2014, again, the case "moved toward trial with customary promptness." *Maddox*, 2008-NMSC-062, ¶ 27.

{22} Though the district court stated that despite its unavailability during the summer of 2014, the case could have been set before March 2015, there is no evidence in the record to support that an earlier setting was available. At the pretrial conference, the

11

district court stated that a separate setting would have to be made and instructed the parties to get with his office for a three-day trial setting. On October 24, 2014, the district court issued notice of a firm three-day jury trial setting, beginning March 25, 2015. This trial setting was at the district court's direction and there was no evidence to show that it could have been set any earlier. We cannot therefore charge the delay of this setting against either party.

{23} In sum, because both parties share some level of responsibility in the delay of this case, along with neutral delay due to the district court's period of unavailability, we conclude that application of this *Barker* factor "tip[s] the balance back in favor of the societal interest in bringing [the d]efendant to trial" and therefore weighs in favor of the State. *See Serros*, 2016-NMSC-008, ¶ 28 (internal quotation marks and citation omitted).

**3.     Assertion of the Right**

{24} Under the third *Barker* factor, "we assess the timing of the defendant's assertion and the manner in which the right was asserted." *Garza*, 2009-NMSC-038, ¶ 32. "We accord weight to the frequency and force of the defendant's objections to the delay and analyze the defendant's actions with regard to the delay." *Spearman*, 2012-NMSC-023, ¶ 31 (alteration, internal quotation marks, and citation omitted). "[P]ro forma motions are generally afforded relatively little weight in this analysis." *State v. Urban*, 2004-NMSC-007, ¶ 16, 135 N.M. 279, 87 P.3d 1061. "[T]he timeliness and

vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection or whether the issue was raised on appeal as [an] afterthought." *Garza*, 2009-NMSC-038, ¶ 32.

{25} Defendant first made an assertion of her right to a speedy trial during defense counsel's entry of appearance. She next asserted her right in her motion to dismiss, which she filed twelve days before the trial setting. Both the State and Defendant agree that Defendant sufficiently asserted her right to a speedy trial, but they disagree with how much weight to assign to Defendant's assertions. The district court made a finding that Defendant asserted her right to a speedy trial, but did not further analyze this factor.

{26} We agree with the parties that Defendant asserted her right to a speedy trial, but we hold that such assertions were not forceful or vigorous such that this factor weighs heavily in her favor. *See Garza*, 2009-NMSC-038, ¶ 34 (holding that the defendant's "single demand for a speedy trial, preceding his motion to dismiss, tucked within the waiver of arraignment and not guilty plea, was sufficient to assert his right" and weighted slightly in the defendant's favor). In evaluating this factor, we are required to assess the timing and manner of Defendant's assertions. *Id.* ¶ 32. Her first assertion, made at the time of defense counsel's entry of appearance, was a standard pro forma assertion of her right. Her next and final assertion came on the eve of trial. We must also consider the fact that Defendant opened the door to the delay by moving for a

13

continuance of the first trial, which the district court granted. Accordingly, we weigh this factor slightly in Defendant's favor. *Id.* ¶ 34 (noting that where a defendant's assertion of his right was neither vigorous nor mitigated by an acquiescence to the delay, the factor weighed slightly in the defendant's favor).

**4.  Prejudice to Defendant**

{27}  Under the fourth and final *Barker* factor, we analyze prejudice to the defendant. *See Barker*, 407 U.S. at 532. The right to a speedy trial was designed to protect three of a defendant's interests: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* Our Supreme Court has held that "generally a defendant must show particularized prejudice of the kind against which the speedy trial right is intended to protect." *Garza*, 2009-NMSC-038, ¶ 39. However, in the event that the first two factors (length of delay and reasons for the delay) weigh heavily in Defendant's favor, and Defendant properly asserted her right to a speedy trial, the court may presume Defendant was prejudiced. *See id.* Such is not the case here.

{28}  In this case, both parties agree that the first and third interests identified in *Barker* are inapplicable to Defendant. Instead, our focus centers on the second interest, to minimize anxiety and concern of the accused. The first two factors do not weigh heavily in Defendant's favor, and therefore she must make a particularized showing of prejudice. *See Garza*, 2009-NMSC-038, ¶ 35 ("[W]e weigh this factor in the

14

defendant's favor only where . . . the anxiety suffered is undue."). Initially, we note, Defendant was not incarcerated while waiting for trial. Further, she does not argue that the delay impaired her ability to defend herself. Instead, the only evidence in the record is Defendant's own testimony explaining her anxiety.

{29}	At the motion hearing, Defendant testified that she had been suffering from anxiety her entire life, but that this incident worsened it. She stated that she experienced physical symptoms of her anxiety in that she would wake up shaking and vomiting because her mind was overrun with thoughts. However, she stated that she does not take medication to manage her symptoms and instead prefers to meditate and go running. Defendant claimed that her worsened anxiety had interfered with her relationship with her children, but that she was able to maintain an adult relationship. Defendant no longer works because of the "heavy anxiety" and the "physical effects from it." She also testified that she has been under pressure because of the charges and the length of time.

{30}	On cross-examination, Defendant admitted that she kept her job without interruption while her charges were pending and left only a few weeks before her March trial setting because that is "when the pressure started." She also testified that she had seen a few counselors to manage her anxiety within the past year and a half but that going to see a doctor caused her more anxiety and she had not found time to do so.

{31} The district court found that the delay worsened Defendant's anxiety, and, thus, that she suffered prejudice as a result. *Ochoa* offers us guidance as to why Defendant's testimony alone is insufficient to prove particularized prejudice. *See Ochoa*, 2017-NMSC-031, ¶ 61. The defendant in *Ochoa* claimed to be prejudiced because he suffered from anxiety as a result of lengthy pretrial incarceration. *Id.* ¶¶ 60-61. However, he did not produce affidavits, testimony, or other documentation detailing his specific circumstances of anxiety. *Id.* ¶ 61. Without offering such materials, the Court declined to speculate as to the particularized anxiety the defendant suffered.

{32} Like the defendant in *Ochoa*, Defendant relied solely on her own testimony to establish undue anxiety and failed to produce any additional evidence that her anxiety was caused by or worsened by the trial delay. Defendant's admission that she suffered from anxiety her entire life complicates the analysis. Without some other evidence in the record beyond Defendant's testimony, we are unable to determine whether she suffered from undue anxiety resulting because of the delay in getting this case to trial, the upcoming trial, or whether her anxiety is the same anxiety she has suffered during her life. *See Maddox*, 2008-NMSC-062, ¶ 33 (noting that "some degree of . . . anxiety is inherent for every defendant . . . awaiting trial") (alterations, internal quotation marks, and citation omitted). Because Defendant did not prove particularized or undue prejudice, this factor does not weigh in her favor. *See Spearman*, 2012-NMSC-023,

16

¶ 39 (stating that it is the defendant's burden to provide evidence of a causal link between the delay and any alleged prejudice as a result of the delay).

**5.      Balancing Test**

{33}    *Barker* instructs us to consider all four factors together along with other relevant circumstances. 407 U.S. at 533. The seven-month delay in this case established presumptive prejudice warranting further analysis into the remaining *Barker* factors. The length of delay weighs slightly against the State. The reasons for the delay weigh in favor of the State. We weigh the assertion of the right to a speedy trial slightly in Defendant's favor. Finally, Defendant was unable to establish particularized or undue prejudice, as required to prevail in *Barker's* balancing test. Considering these factors in totality, we conclude that the *Barker* factors do not support the district court's dismissal of Defendant's charges based on a violation of speedy trial grounds.

**III.    CONCLUSION**

{34}    For the foregoing reasons, we hold that Defendant's constitutional right to a speedy trial was not violated. We therefore reverse the district court's order dismissing Defendant's charges and remand to the district court for further proceedings.

{35}    **IT IS SO ORDERED.**

_____

**M. MONICA ZAMORA, Judge**

**WE CONCUR:**

17

**JULIE J. VARGAS, Judge**

**STEPHEN G. FRENCH, Judge**